**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank Edward READY,
Defendant-Appellant.**

No. 76–2050.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 27, 1978.

Decided March 28, 1978.

Rehearing Denied June 5, 1978.

James P. Buchele, U. S. Atty., Topeka, Kan. (E. Edward Johnson, former U. S. Atty., Topeka, Kan., and Douglas B. Comer, Asst. U. S. Atty., Prairie Village, Kan., on the briefs), for plaintiff-appellee.

Thomas M. Dawson, Leavenworth, Kan., for defendant-appellant.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Appellant Frank E. Ready was convicted by a jury in the District Court for the District of Kansas on all counts of an indictment charging: in one count, conspiracy with his wife and possible others to defraud the United States by filing false income tax returns claiming refunds; in separate counts, the filing of five specified false and fictitious tax returns; and in two additional counts, cashing of refund checks obtained as a result of such filings; in violation of 18 U.S.C. §§ 286, 287, 641 and 2. He appeals to this Court from such conviction.

Ready alleges that a number of errors were made by the trial court, including its rulings on his motion to suppress certain documents taken in a search of his room at the Leavenworth Penitentiary honor camp; refusal to grant him additional time to pre-

pare after the Government filed a new indictment five weeks prior to the trial; failure to order severance of counts for separate trials; denial of separate trials for Ready and his wife. He also argues, *inter alia*, that the Court erred in not giving him the use of a tax expert to help prepare his case, in admitting evidence by a handwriting expert, and in charging him under Title 18 instead of under Title 26, which carried lesser penalties.

Since this is a review of a conviction by the jury below the evidence must be viewed in the light most favorable to the Government. *United States v. Downen,* 496 F.2d 314, 318 (10th Cir. 1974).

The Internal Revenue Service became interested in the defendants in March 1976 when an employee at the Austin Service Center noticed on a computer printout that two refunds scheduled for payment were based on returns having similarities in the address and claimed status, with both seeking refunds for amounts in excess of $9,000. These returns of Francis E. Ready and M. J. Ready were brought to the attention of the Austin Chief of Intelligence who initiated an investigation by the Wichita District Office and alerted the Kansas City Regional Center that a multiple filer scheme might exist.

The Kansas City Center searched its files using the names and social security numbers received from Austin and recovered seven returns filed during tax years 1973 to 1975. All of the returns bore the surname Ready or Wood except one 1974 return bearing the name Reedy. Further inquiry revealed six refunds, five of them exceeding $9,000, had been issued on these returns. The seventh refund was stopped in process as a result of the investigation and no check was issued on it.

The Government's evidence at trial included testimony of employers represented on returns as the source of income, bank employees where Mrs. Ready maintained her account, IRS agents related to the investigation, and witnesses having contact with one or the other of the defendants during the period in question.

The 1973 return of Melinda Jean Wood claimed a refund of $4,121.82 based on income received from Beckman Industries as a secretary. The wage administrator for Beckman Industries confirmed her employment there during 1973 but stated that the large entertainment and travel deductions claimed were not usual or likely for a secretary. Mrs. Ready admitted filing the return but testified she merely copied the figures supplied by Frank Ready and did not question the size of the refund based on total income of $6,000. Frank Ready testified that though he was not married to her in 1973, he claimed his deductions for 1973 on Melinda's return but did not report his entire income on the return, and his understanding was that the regulations permitted this. The 1974 returns of Francis E. Ready, the Ready's 2½-month-old son; Patrick F. Reedy, an alias used by Ready; and M. J. Ready each claimed a refund between $9,487.07 and $9,792.09 based on incomes received from Allstate Mobile Home and Recreational Vehicle Repair. Frank Ready admitted filing all the returns and testified they were based on income received from Allstate which he divided up among his wife, child, and himself according to ownership, even though it resulted in $41,000 income for his 2½-month-old son listed on the return as an outside sales manager with a $34,000 casualty loss which Ready could not explain. Employees of the IRS testified that a search of the employer identification number listed on Allstate's W-2 forms revealed no withholding or tax return filings by Allstate for the tax years 1972 through 1975.

The five returns for 1975 of Frank P. Ready, Frank E. Ready, Francis E. Ready, M. L. Ready, and M. J. Ready each claimed a refund between $9,685.64 and $9,910.36 based on incomes from one of several employers. Representatives of the employers testified that their company records indicated none of the persons named as filers of the various returns were employees in 1975. Each representative explained peculiarities with respect to the W-2 forms or returns with which their company's name was associated. These included evidence that few or no company employees received salaries in the totals reported, that no outside salesmen were on the company payroll, that the W-2's were on different forms than used by the company, and typed on different typewriters, and in one case that erroneous or obsolete company identification numbers were used. It was shown that prison inmates at Leavenworth known to Ready had actually been employed by those companies in prior years.

The testimony of bank employees at the First National Bank of Leavenworth and other witnesses traced refund checks based on the returns. The bank employees recounted receiving deposits of government checks by Mrs. Ready on two occasions, which matched the refund amounts requested on the 1975 returns of Francis E. Ready and M. J. Ready.

An attorney retained by Frank Ready in 1975 to represent Ready on appeal of an earlier conviction testified that he received a government check payable to Patrick F. Reedy which Frank Ready endorsed and requested the attorney put in trust to be disbursed as defendant Ready directed. Mrs. Ready in 1975 brought in a government check payable to Melinda Wood in the amount of $9,664.90 which was deposited in the Ready account.

Frank Ready's defense on the 1975 returns was that he did not make them; but he never denied receiving some of the refund checks based on the 1975 returns. He accepted the checks because, he states, his understanding was they were part of a claim he had against the Government for $29,000 from earlier tax years.

An IRS agent identified various letters sent by Ready to his wife discussing tax matters as letters he obtained from trash located on property of Mrs. Ready's landlord. The landlord testified that on one occasion he disposed of some trash at Mrs. Ready's request which he dumped on his farm. Another agent testified that during a search of Mrs. Ready's home certain letters, social security card stubs and two rebate checks for $100 each for the tax year

1974 payable to Patrick F. Reedy and Francis E. Ready were found. Frank Ready admitted having seven social security numbers, but explained the stubs found were for another inmate and not for his use.

Several prison officials testified as to tax materials Frank Ready possessed in prison. His caseworker testified on one occasion in late 1974 or early 1975 Ready received in the mail in excess of one hundred tax forms. Ready admitted obtaining tax manuals under the Freedom of Information Act and requesting tax forms.

Shortly before the indictment against Ready was entered the security supervisor directed Ready be moved from the honor camp to the prison. During the inventory of Ready's property at the honor camp various items of correspondence were taken to the security supervisor based on his earlier instructions. He and another prison official searched through the property and found 1975 tax return forms and a notebook containing references to tax matters which were turned over to IRS agents.

Finally, a handwriting expert testified for the Government. Based on comparison of the tax returns in evidence with known exemplars he expressed an opinion that the printing on the returns was by one or the other co-defendants.

Upon this evidence the jury convicted defendant Ready on all eight counts, and his wife upon the conspiracy and cashing of refund check counts. We have before us only an appeal by Frank Ready.

Appellant Ready contends that the warrantless search and seizure of papers in his honor camp room at the time of his transfer to the main penitentiary was in violation of his Fourth Amendment rights, and that evidence obtained in the search should have been suppressed. This raises the question of a prisoner's right to privacy while incarcerated.

In *Lanza v. New York,* 370 U.S. 139, 143, 82 S.Ct. 1218, 1221, 8 L.Ed.2d 384 (1961) the Supreme Court, considering electronic eavesdropping of the visitors' room of a public jail, in *dicta,* called the claim that a public jail is entitled to Fourth Amendment protection, "at best a novel argument." It said:

> . . . Yet, without attempting either to define or to predict the ultimate scope of Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day. . . .

That case was decided upon a different ground, however, and three justices objected to the unnecessary comment on the constitutional issue.

It has since been held that prisoners do not give up all constitutional rights while in prison. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Mr. Justice Stevens, while a Circuit Judge, invoked the Fourth Amendment, holding that a prisoner enjoys its protection "at least to some minimal extent," to support, along with due process grounds, relief for a prisoner who had a trial transcript taken from his cell in a warrantless shakedown search. *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir. 1975). *See also, United States v. Savage,* 482 F.2d 1371 (9th Cir. 1973), *cert. denied,* 415 U.S. 932, 94 S.Ct. 1446, 39 L.Ed.2d 491 (1974).

This Court has upheld rectal searches of prisoners under sanitary and nonhumiliating conditions as "a necessary and reasonable concomitance of appellants' imprisonment." *Daughtery v. Harris,* 476 F.2d 292, 295 (10th Cir. 1973), *cert. denied,* 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973). We have also allowed into evidence messages between inmates, turned over voluntarily by inmate-orderlies, as having come into possession of prison officials "under established practices reasonably designed to promote the discipline of the institution." *Denson v. United States,* 424 F.2d 329, 331 (10th Cir. 1970), *cert. denied,* 400 U.S. 844, 91 S.Ct. 88, 27 L.Ed.2d 80 (1970).

The Ninth Circuit has faced the issue in almost exactly the same context we have it here, tax materials in a fraudulent income tax refund claim case, seized in a warrant-

less search of a prison cell. Citing the *Lanza v. New York dicta* it declared in a brief opinion that it is not reasonable for a prisoner to consider his cell private, and therefore the search did not violate Fourth Amendment rights. *United States v. Hitchcock,* 467 F.2d 1107 (9th Cir. 1972), *cert. denied,* 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973). *Accord, United States v. Palmateer,* 469 F.2d 273 (9th Cir. 1972).

■ Certainly in a federal prison the authorities must be able to search the prisoners' cells without a warrant, without notice and at any time, for concealed weapons and contraband of the type which threatens the security or legitimate purposes of the institution. This is done routinely at Leavenworth when a prisoner is transferred from the honor camp outside the walls, back inside, for obvious reasons.

■ It is virtually impossible for the Court to ascertain motives of prison officials, *e. g.,* here whether the transfer back inside prison was to impede an escape which the prisoner might attempt if he would learn of the investigation, or whether it was to provide an excuse to look through his papers. If the search procedure is routine and reasonably designed to promote the discipline of the institution, we will not require a search warrant. *See Stroud v. United States,* 251 U.S. 15, 21–22, 40 S.Ct. 50, 64 L.Ed. 103 (1919). This situation clearly meets that test.

A more difficult matter is Ready's contention that he should have been granted a continuance to prepare for trial when the two-count April 7, 1976, indictment was superseded by an eight-count July 29, 1976, indictment. His trial commenced slightly more than one month later on August 31, 1976. He asked for a continuance claiming he needed time to obtain and study records and procure witnesses.

The April 7 indictment charged Ready and his wife on one count of filing a false tax return in February 1976 claiming a refund, and on one count of theft of public money by cashing the refund check obtained from the filing of the false return, in violation of 18 U.S.C. §§ 287, 641 and 2.

The superseding indictment of July 29 charged under the same code sections, but added to the two previous counts (which were repeated) several more false tax returns, all filed in February or March of 1976, and one additional count on cashing a refund check arising out of one of the charged filings. It also added a count in conspiracy to violate 18 U.S.C. §§ 286 and 641, listing as overt acts the filing of false tax returns in 1974 and 1975, as well as 1976, under various names, and cashing refund checks obtained therefrom.

■ Both the Government and the defendant normally have an interest in a speedy trial. Granting or denying a requested continuance is within the discretion of the trial judge. *United States v. Long,* 449 F.2d 288 (8th Cir. 1971), *cert. denied,* 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 247 (1972). We can reverse only if we find an abuse of discretion. In considering whether the trial judge abused his discretion we must look to the defenses asserted, which also requires us to look at other alleged errors in the Court's rulings.

Ready had notice from the date of the first indictment, April 7, that he was charged with filing a false 1975 income tax return. His defense to that and to all of the other 1975 tax returns listed in the superseding indictment was that they were forgeries. He claimed he filed nothing, but was fall guy for another prisoner's fraudulent scheme. Presumably he had been working on putting together his defense since April 7, on the one return. The charges on additional 1975 returns should not hinder his development of the defense. They might even help, by providing more examples of the handiwork of another, particularly if he would establish that he did not receive and cash the refund checks. The Court appointed a handwriting expert to aid him in developing this defense, although at the trial Ready chose not to introduce any such expert testimony.

Ready's defense on the 1973 and 1974 returns charged in the conspiracy count was that he prepared or filed them, splitting

income from his business among his wife, his 2½-month-old son and himself, under an alias he used with the claimed permission of the prison authorities, as he supposed he was entitled to do so. As to the cashing of the refund checks, he admitted that also, but said he thought they were payments toward some unexplained $29,000 the Government owed him from prior years.

We note here that Ready made at least two claims in addition to the demand for continuance: that he be granted a tax expert to help prepare his case, and a severance on the counts relating to 1973 and 1974 returns from those treating the 1975 tax returns.

We have carefully reviewed the many volumes of exhibits in this case, including all of the items Ready presented which supported his claim for aid from a tax expert and time to prepare. Very few, if any, of the receipts, checks, etc., dealt with the tax years 1973 and 1974. There was almost nothing on the Allstate Mobile Home and Recreational Vehicle Repair business which he claimed was the source of the very considerable income and expenses he distributed among three tax returns he admitted filing for 1974. Tax experts are not magicians. With no checks, receipts or company tax reports to work with no one could have constructed a defense; no tax expert could justify the actions on filing (and lack thereof by his company) which were done in this case. Appointing an expert is within the discretion of the Court. See *United States v. Moss,* 544 F.2d 954 (8th Cir. 1976), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977). In *Christian v. United States,* 398 F.2d 517 (10th Cir. 1968) we held the trial judge must satisfy himself such services are necessary. The mere allegation that an expert would be helpful is insufficient. There was no abuse in denying defendant's request.

We see no prejudice to Ready in the refusal to grant the continuance, nor in the denial of severance on the separate tax years. See *United States v. Meriwether,* 486 F.2d 498 (5th Cir. 1973), *cert. denied,* 417 U.S. 948, 94 S.Ct. 3074, 41 L.Ed.2d 668

(1974), a tax fraud case involving three separate years where the Court found nothing improper in the multi-count indictment even though the Court acknowledged the possibility a jury might infer guilt on all counts from guilt on one.

Ready contends the trial court should have granted his motion for severance of his trial from that of his wife because of the hostility existing between him and his wife (she divorced him during the pendency of the litigation), and because her defense intended to lay the blame entirely on the defendant. As above mentioned, severance is a matter of discretion, not of right, and defendant has burden of showing real prejudice to his case. *See United States v. Kirk,* 534 F.2d 1262 (8th Cir. 1976). In *Baker v. United States,* 329 F.2d 786 (10th Cir. 1964) this Court held that hostility between co-defendants or the fact that one defendant may try to cast the blame on the other, is not in itself a sufficient reason to require separate trials.

The defendant relies on *United States v. Valdes,* 262 F.Supp. 474 (D.Puerto Rico 1967). Unlike this case, the co-defendant in *Valdes* sent a letter to the Court containing highly prejudicial statements and stated openly that he intended to introduce evidence in his own defense showing that the other defendant was guilty. Considering the defenses Ready asserted, that someone else (not his wife) prepared the 1975 tax returns, his admission that he prepared the others and accepted the refunds as moneys owed to him by the Government, we can see no harm to Ready from the denial of his motion for severance.

We have read the record of the testimony of the Government's handwriting, handprinting expert. His testimony was limited to the handprinting, and entirely proper.

Ready alleges that the Government should have charged him under U.S.Code Title 26, the income tax provisions, rather than under Title 18. Which of two applicable statutes will be made the basis of an

indictment is the decision of the Government prosecutors, and there are many tax fraud cases charging under Title 18. *E. g., Kercher v. United States,* 409 F.2d 814 (8th Cir. 1969).

We have examined the record and authorities cited with respect to the several other alleged errors in the various rulings of the trial judge, and find no prejudicial error in any of them. The record presents an overwhelming case against defendant-appellant.

AFFIRMED.