UNITED STATES of America, Plaintiff-Appellee,

v.

Walter H. McCLURE and Anthony Tafoya, Defendants-Appellants.

Nos. 83–1525, 83–1547.

United States Court of Appeals, Tenth Circuit.

May 9, 1984.

Before KENNEDY, PREGERSON and NELSON, Circuit Judges:

William L. Lutz, U.S. Atty., Albuquerque, N.M. (Larry Gomez, Asst. U.S. Atty., Albuquerque, N.M., with him on briefs), for plaintiff-appellee.

Sarah Michael Singleton, Santa Fe, N.M. (John Higgins of Higgins & Lee, Albuquerque, N.M., with her on brief), for defendant-appellant McClure.

Martha A. Daly, Santa Fe, N.M., and Timothy M. Padilla, Albuquerque, N.M. (Michael Alarid, Jr., Albuquerque, N.M., with him on brief), for defendant-appellant Tafoya.

Before SETH, Chief Judge, and BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Walter H. McClure (McClure) and Anthony Tafoya (Tafoya) appeal from a judgment entered upon a jury verdict by the United States District Court for the District of New Mexico. The jury found both men guilty of possession of cocaine with the intent to distribute, and of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. A review of the necessary facts will facilitate our consideration of this appeal.

In 1982, the Albuquerque Police Department and the New Mexico State Police were involved in an ongoing undercover investigation regarding unlawful drug trafficking by one Larry Candelaira. In November of that year, Candelaria contacted Detective Don Smith of the Albuquerque Police Department who was acting undercover as a person interested in purchasing cocaine. Candelaria and Smith agreed to meet at Albuquerque's Kettle Restaurant on November 15, 1982, in order to discuss further a possible cocaine transaction.

On that day, Smith and New Mexico State Police Narcotics Agent Gilbert Baca went to the Kettle to wait for Candelaria. Approximately thirty-five minutes later, Candelaria arrived in his Oldsmobile, followed by a Mercedes-Benz driven by McClure. Tafoya was also in McClure's vehicle.

Tafoya and Candelaria met with Smith and Baca in the restaurant while McClure waited outside in his car. During this time, two other surveillance officers saw McClure go to the trunk of his car where he retrieved a package which he apparently placed under the driver's seat. Smith, upon exiting the Kettle with Candelaria, asked him why he had brought Tafoya and McClure. Candelaria responded, "Well, you wanted to meet the main man," while pointing to McClure.

The parties determined that the deal should take place at Tafoya's apartment. At the apartment complex, McClure carried a plastic sack from his car to Tafoya's apartment. Once inside, McClure placed the package on the kitchen table and then sat in a rocking chair across the room.

The package contained cocaine, which Tafoya invited Smith to inspect. When Smith questioned the cocaine's low selling price of $25,000, Tafoya explained that they were just trying to "get rid of it." Tafoya handed Smith a small package of "uncut Peruvian flake," a particularly high-quality cocaine. Smith asked Tafoya about the price of a kilo of this cocaine, to which McClure, sitting across the room, replied, "$83,000."

Smith instructed Baca to go outside to their vehicle for the $25,000 to purchase the cocaine. Candelaria left shortly after Baca and was arrested while attempting to flee the scene. Baca then returned with other officers; McClure and Tafoya were arrested. A handgun, in plain view, was taken from McClure's automobile and later a three-ounce Baggie of cocaine was seized from the car pursuant to a search warrant.

On appeal, McClure and Tafoya present various joint and individual allegations of error. Both men argue that the district court abused its discretion by refusing to grant a severance, by denying their motion to discover, and by refusing a requested jury instruction. Tafoya also argues separately that the court abused its discretion by denying his motion for a bill of particulars. McClure maintains individually that the court abused its discretion by refusing to allow a particular witness to testify because of the witness's presence in the courtroom in violation of the sequestration rule.

## I.

### *Severance*

■ McClure and Tafoya contend that the trial court abused its discretion by denying their motion for severance. Both defendants were properly joined pursuant to Fed.R.Crim.P. 8(b) as they were "alleged to have participated in the same act or transaction ... constituting an offense." They argue, however, that the district court should have utilized its discretionary power to order separate trials under Fed.R. Crim.P. 14 because of the inherent and actual prejudice attaching to their joint trial.

■ To establish that a trial court abused its discretion by denying a defendant's request for severance, a defendant must show that actual prejudice resulted from the denial. *United States v. Long*, 705 F.2d 1259, 1263 (10th Cir.1983). McClure and Tafoya point to several factors which allegedly constituted such prejudice.

Initially, both defendants maintain that the defenses presented by them were "directly antagonistic," and "mutually exclusive." They claim that Tafoya's defense rested upon the guilt of McClure and McClure's defense depended upon the guilt of Tafoya. They argue that this scenario forced each defendant to accuse the other of criminal conduct, that these defenses were, hence, irreconcilable, and that the jury unjustifiably inferred guilt from this conflict.

■ We have held, however, that one defendant's attempt to cast blame on the other is not in itself a sufficient reason to require separate trials. *United States v. Calabrese*, 645 F.2d 1379, 1384 (10th Cir. 1981), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *United States v. Ready*, 574 F.2d 1009, 1015 (10th Cir. 1978). We have also held that severance is not required simply because separate trials might have offered a better chance for acquittal to one or more of the accused. *United States v. Calabrese, supra* at 1385; *United States v. Knowles*, 572 F.2d 267, 270 (10th Cir.1978). Clearly, mere *conflicting defenses* do not, standing alone, constitute the showing of prejudice necessary for judicial severance. This court has indicated, however, that *irreconcilable defenses* may require that defendants be tried separately. *United States v. Calabrese, supra.* Noting that we have never specifically defined or found such defenses, McClure and Tafoya rely heavily upon *United States v. Crawford*, 581 F.2d 489 (5th Cir.1978), and *United States v. Johnson*, 478 F.2d 1129 (5th Cir.1973) as cases demonstrating "irreconcilable and mutually exclusive defenses mandating severance."

In *Crawford*, two defendants were charged with joint possession of a sawed-off shotgun recovered from an automobile in which both defendants were riding at the time of their arrest. Defendant Blanks testified that Crawford owned the shotgun; Defendant Crawford testified that Blanks owned the firearm. In reversing the district court's decision denying the defendants' motion to sever, the Fifth Circuit held:

This record discloses that the defenses asserted by Blanks and Crawford were irreconcilable as well as mutually exclusive. *The sole defense of each was the guilt of the other.* Blanks incriminated Crawford and exculpated himself at every opportunity. Crawford, on the other hand, attempted to show that he was not culpable because Blanks alone had possession of the firearm. *Each was the government's best witness against the other.*

581 F.2d at 491–92 (emphasis added).

It is highly significant, in our view, that the *Crawford* court based its finding of "irreconcilable defenses" upon a close review of the record. The court did not rest upon a mere abstract allegation, but examined the record for an actual showing of prejudice stemming from the assertion of irreconcilable defenses.

In *Johnson*, the Fifth Circuit made a similar review of the record in search of a demonstration of prejudice. *Johnson* involved the conviction of one Johnson and one Smith for violating federal laws involving the passing of counterfeit Federal Reserve notes. Johnson denied being present when the crime charged was committed. Smith, however, relying upon a defense that he lacked the necessary *mens rea*, confessed that he and Johnson had passed the notes. The court, in holding that Johnson was entitled to a separate trial, noted the following:

A study of the record reveals that Smith's attorney implicated Johnson at every opportunity. Moreover, Smith's confession was introduced with no deletions of the incriminating statements concerning Johnson. When Smith took the stand, he affirmed his out-of-court statement and also took every available opportunity to further incriminate Johnson as a generally bad person and as the prime mover in the counterfeit transaction. *In sum, Smith was the government's best witness against Johnson.*

478 F.2d at 1133 (emphasis added).

■ Assuming *arguendo* that McClure and Tafoya presented, in theory, "irreconcilable and mutually exclusive" defenses,[1] a

---

1. We are unconvinced that McClure or Tafoya have made even this showing. In our view, such a showing would require that the acceptance of one party's defense would tend to preclude the acquittal of the other. Conversely, such a showing would seemingly require that the guilt of one defendant tends to establish the innocence of the other. *See United States v. Petullo*, 709 F.2d 1178, 1181–82 (7th Cir.1983); *United States v. Crawford*, 581 F.2d 489 (5th

review of the record reveals little, if any, actual prejudice.

McClure asserts that "the antagonism between the two defendants was nowhere more apparent than in Mr. Tafoya's objection to Mr. McClure's explanation of the ownership of the handgun which was seized from the automobile." Brief of Appellant McClure at 10. The government sought to introduce this gun on the theory that it was present in the car to offer protection for the cocaine. (R., Vol. VII at 91.) McClure explained that he did not own the gun and attempted to explain that Tafoya's business partner, Ralph Villegas, had told him that the gun was his. (*Id.* at 36.) At this point, both Tafoya and the government objected. The court ruled that McClure could develop the subject of Villegas's ownership of the gun, but not through inadmissible hearsay. (*Id.* at 37.) McClure later attempted to call Villegas to testify, but the court prohibited this action because Villegas had been present in the court throughout the trial in violation of the sequestration rule. (*Id.* at 40.)

■ In our view, McClure's failure to establish the ownership of the gun did not stem from his being jointly tried with Tafoya. Rather, McClure sought to rely upon inadmissible hearsay and the testimony of a witness who had been improperly present at trial. We cannot divine what may have occurred had McClure been separately tried, but McClure makes no showing that severance would have promoted his attempts to show ownership. Perhaps, given another chance, McClure's attorney would have avoided the procedural blunder of allowing witness Villegas to remain in the courtroom in violation of the rule. This benefit, however, would accrue not from the circumstance of separate trial, but from the increased caution of McClure's attorney. Procedural errors, tactical blunders, and simple misfortunes cannot be

equated with the actual prejudice necessary to require severance.

Next, McClure and Tafoya each maintain that their joint trial created a confrontation between Tafoya's fifth amendment right to remain silent and McClure's sixth amendment confrontation rights. Tafoya chose not to testify, nor to rebut by evidence the government's case. McClure, however, personally took the stand and also presented character witnesses in his behalf. Before closing argument McClure's counsel requested the court to allow him to argue to the jury that the proper inference to be drawn from Tafoya's silence was McClure's truthfulness and innocence. The court denied this request, but allowed McClure's counsel to comment as much as he desired about the significance of *McClure's* decision to take the stand.

During closing argument McClure's counsel made the following remarks:

Now, let's talk about credibility. Mack McClure did not have to take the stand and testify. In a criminal case, he is not—or, a defendant is not required to take the stand and testify on his own behalf. Mack McClure had absolutely nothing to hide, and because he had nothing to hide, he subjected himself to whatever question the United States Attorney wanted to throw at him.

(*Id.* at 100.)

At this point Tafoya's counsel objected on the grounds that the above remarks indirectly implicated Tafoya for his failure to testify. He argued that such prejudice required severance and a mistrial. The court denied the relief sought by Tafoya.

On appeal Tafoya argues that McClure's closing argument interferred with his fifth amendment rights and constituted the actual prejudice requiring severance. McClure, on the other hand, maintains that the

---

Cir.1978); *United States v. Hyde,* 448 F.2d 815, 832 (5th Cir.1971), *cert. denied,* 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972).

In the present case, neither McClure's nor Tafoya's abstract assertions of innocence necessarily tended to prove the other guilty. Both

were charged with involvement in a *joint operation* with Candelaria; either, neither, or both men could have logically been convicted or acquitted. Both men asserted their innocence. The jury could have logically accepted both theories by laying the blame on Candelaria.

court's prohibition of comment upon Tafoya's failure to testify interferred with his sixth amendment rights and constituted actual prejudice requiring severance. We find neither argument persuasive.

Both McClure and Tafoya rely heavily upon *DeLuna v. United States*, 308 F.2d 140 (5th Cir.1962). In *DeLuna*, one Gomez and one deLuna were charged jointly with receiving and facilitating the transportation and concealment of a narcotic drug and acquiring a narcotic drug in violation of the Narcotic Drug Import and Export Act. DeLuna did not take the stand, while Gomez chose to testify and to present character witnesses. Gomez presented himself as an innocent victim of circumstances; his only connection with the narcotics came when deLuna tossed him the package when deLuna saw the police coming. DeLuna's attorney, however, argued that Gomez was trying to make a scapegoat of deLuna and that Gomez was the sole owner of the package at all times.

During closing argument Gomez's attorney made the following remarks:

We know a little something about Adolfo Gomez. We knew that for fifteen or twenty years, more or less, he has worked day after day at hard labor. *I don't know what this man [deLuna] does for a living. He could have gotten up and told you* .... Now, further, Adolfo Gomez has given you his version of the facts in this case. He has told you how the narcotics came into his possession .... *I haven't heard anyone deny that* .... Well, at least one man was honest enough and had courage enough to take the stand and subject himself to cross-examination, and tell you the whole story .... *You haven't heard a word from this man* [deLuna].

308 F.2d at 142 n. 1 (emphasis added).

DeLuna's attorney objected several times to these comments on his client's failure to testify. The court instructed the jury that it could not consider deLuna's failure to testify in passing upon the question of his guilt or innocence. The jury acquitted Go-

mez while finding deLuna guilty on both counts.

In reversing the judgment against deLuna, the Fifth Circuit noted that the court's limiting instruction, while well intended, did not neutralize the effect of the comments. The court held that the *Fifth Amendment required the trial judge to protect the accused's right of silence* and that his failure in this regard required reversal. *Id.* at 154–55 (emphasis added). In his special concurrence Judge Bell noted that the "right of deLuna *under the Fifth Amendment,* and Title 18 U.S.C.A. § 3481, not to have the fact that he failed to testify commented upon is involved primarily." *Id.* at 155 (emphasis added).

Although the holding of *DeLuna* dealt only with protecting the fifth amendment rights of a nontestifying defendant, the majority nonetheless, in dictum, also commented upon the rights of the *testifying* codefendant in a joint trial. According to the majority, this codefendant's rights to confrontation allow and indeed sometimes *require* his attorney "to draw all rational inferences from the failure of the defendant to testify." *Id.* at 143 (emphasis added). Such comment would, of course, run afoul of the nontestifying defendant's fifth amendment rights; hence, the *DeLuna* majority stated that under such circumstances it was the "duty" of the trial judge to order that the defendants be separately tried. *Id.* at 141.

The *DeLuna* dictum has been cited on numerous occasions for the notion that a defense attorney may, under certain circumstances, be *obligated* to comment upon a codefendant's invocation of the fifth amendment, and that such an obligation requires severance. *See United States v. Kopituk,* 690 F.2d 1289, 1319 (11th Cir. 1982); *United States v. Hyde,* 448 F.2d 815, 832 (5th Cir.1971); *United States v. De La Cruz Bellinger,* 422 F.2d 723, 726 (9th Cir.1970); *Kolod v. United States,* 371 F.2d 983, 991 (10th Cir.1967), *cert. denied,* 389 U.S. 834, 88 S.Ct. 40, 19 L.Ed.2d 95 (1967). We find this frequent citation somewhat curious in that no decision of

which we are aware, including *DeLuna*, has ever ordered a severance based upon this supposed "obligation."

As Judge Bell pointed out in his special concurrence, there is no specific authority for the *DeLuna* majority's proposition. In his view, the majority's opinion would "create an intolerable procedural problem" which would "eliminate joint trials, or vest in a defendant the right to a mistrial during final arguments, or in the alternative create built-in reversible error, all in the discretion of the defendants." 308 F.2d at 156 (Bell, J., concurring). Although these dire predictions have not become a noticeable reality, it is clear that the *DeLuna* dictum has created much confusion and concern among the bench and bar. Great amounts of legal and judicial resources have been spent distinguishing numerous cases from the *DeLuna* dictum. Again, no decision of which we are aware, *including DeLuna*, has ever ordered a severance on the basis of the *DeLuna* rationale.

■ We reject the dictum of the *DeLuna* majority and today hold that under no circumstances can it be said that a defendant's attorney is obligated to comment upon a codefendant's failure to testify.[2] As the Supreme Court has noted, the assertion of the fifth amendment privilege "is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the legal assertion by the witness of his constitutional right." *Johnson v. United States*, 318 U.S. 189, 196, 63 S.Ct. 549, 553, 87 L.Ed. 704 (1943). If in fact the invocation of the fifth amendment privilege is of such dimension that it permits no inference of guilt or innocence, *it is without probative value on the issue of a defendant's guilt or innocence. United States v. Marquez*, 319 F.Supp. 1016, 1022 (D.C.N.Y.1970). *See also United States v. Atnip*, 374 F.2d 720, 723 (7th Cir.1967). Hence, we reject the notion that under certain circumstances

a defense attorney may be "duty bound" to comment upon nonprobative evidence.

In our view, this holding does not impair a defendant's sixth amendment confrontation rights. As the Supreme Court has said, a defendant is entitled to a fair trial, not a perfect one. *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). Should a defendant seek to lay blame upon a nontestifying codefendant, he can always take the stand and testify against him. Such testimony would be entitled to great probative value; a jury's decision resting upon this evidence would, in our view, rise to a fairer level than one influenced by self-serving implications drawn by an attorney regarding a codefendant's silence.

■ Similarly, we reject Tafoya's argument that McClure's closing argument prejudiced him by actually implicating his fifth amendment rights. McClure's argument made no direct reference to Tafoya (unlike the closing argument in *DeLuna*), and followed the court's directive to deal only with McClure's decision to testify. In addition, the court instructed the jury that it could not consider Tafoya's silence in determining guilt or innocence. We thus hold that McClure's statement was not of "such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955). *See also United States v. Walton*, 552 F.2d 1354, 1362–63 (10th Cir.1977), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977).

Next, Tafoya argues that the court's admission of evidence of other crimes committed by McClure illustrated the actual prejudice stemming from their joint trial. Specifically, Tafoya claims prejudice from the introduction of cocaine located in McClure's

---

**2.** The Sixth Circuit has also apparently rejected the *DeLuna* dictum. *See United States v. McKinney*, 379 F.2d 259, 265 (6th Cir.1967). In a well-reasoned opinion, the United States District Court for the Southern District of New York strongly criticized and clearly rejected the rationale of the *DeLuna* majority. *See United States v. Marquez*, 319 F.Supp. 1016 (D.C.N.Y. 1970) (J. Weinfeld).

**492**

car. This cocaine was not the subject of the current charges, but was introduced to show opportunity, plan, or absence of mistake pursuant to Fed.R.Evid. 404(b). Because the jury was not instructed that the cocaine was admissible only against McClure, Tafoya asserts that the jury could not have been expected to "compartmentalize" properly the evidence against each defendant. Hence, according to Tafoya, severance was required in order to avoid confusing the jury.

■ Initially, it is important to note that Tafoya never requested an instruction that the narcotics found in McClure's car be considered only in relation to McClure. Second, the government did not seek to prove that Tafoya was involved with the cocaine found in McClure's car. Third, the jury *was* instructed that neither defendant was on trial for possession of this cocaine. Finally, the evidence in this case was neither lengthy nor, in our view, confusing; it consisted of eight witnesses and seven exhibits, and the entire trial lasted only two days.

■ Evidence of prior criminal offenses relating only to one defendant does not generate prejudice arising to the level requiring severance. *United States v. Reeves*, 674 F.2d 739, 746 (8th Cir.1982); *United States v. Salomon*, 609 F.2d 1172, 1175 (5th Cir.1980). Such prejudice is not shown unless the evidence is so complex or confusing that the jury would be unable to make individual determinations about the guilt or innocence of each defendant. *United States v. Bright*, 630 F.2d 804, 813 (5th Cir.1980). Tafoya has made no such showing; the government established a convincing case against Tafoya through the testimony of its undercover agents regarding the narcotics transaction in Tafoya's apartment. *Cf. United States v. Carter*, 613 F.2d 256, 260 (10th Cir.1979), *cert. denied*, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 24 (1980). There is no indication from the record that the jury was confused by the admission of the additional narcotics found in McClure's car.

In sum, the record does not demonstrate that Tafoya or McClure were specifically prejudiced by their joint trial. Assuming that their defenses were in theory "antagonistic and mutually exclusive" (*see* note 1, *supra*), the record fails to demonstrate even a generalized antagonism toward each other at trial. Unlike the situations in *Crawford* and *Johnson, supra,* the sole defense of McClure and Tafoya was not the guilt of the other, the attorneys for the defendants did not implicate the codefendant at every opportunity, and, most important, *the government's best witness against each defendant was not the other codefendant.* Indeed, the government's best evidence against each defendant consisted of the testimony of its undercover agents. This testimony, standing alone, was strong enough to support the conviction of McClure and Tafoya. We are convinced that both defendants received a fair trial and that the trial court did not abuse its discretion in declining to grant a severance.

## II.

### Pretrial Motions

McClure and Tafoya argue that the district court abused its discretion in failing to grant both defendants' motions for discovery of prearrest statements made to investigating officers. Additionally, Tafoya argues separately that the court similarly abused its discretion in denying his motion for a bill of particulars.

*Prearrest Statements:* Pursuant to Fed.R.Crim.P. 16(a)(1)(A), McClure and Tafoya sought to discover statements made by them and coindictee Candelaria to the undercover officers during the drug transaction. The defendants did not realize that the undercover agents were in fact police officers when the statements were made. The agents subsequently summarized these statements and reduced them to writing in their investigative reports.

■ Fed.R.Crim.P. 16(a)(1)(A) reads in pertinent part:

Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: [1] any relevant written or recorded statements made by the defendant .... [2] *the substance of any oral statement* which the government intends to offer in evidence at the trial· *made by the defendant* whether before or after arrest *in response to interrogation by any person then known to the defendant to be a government agent.* (Emphasis added.) The rule makes a clear distinction between written/recorded statements and oral statements. The latter may be discovered only when made in response to interrogation by known government agents. In our view, the statements sought to be discovered were clearly "oral statements," even though they were subsequently summarized by the agents. In order for any statement, oral or written, to be discoverable, it would appear that the statement must in some manner be recorded; a defendant would be hard pressed to discover the ears of an interrogating officer. The mere fact of summarizing an oral statement could surely not transform it into a written/recorded statement; to hold otherwise would render meaningless the distinction between oral and written statements under the rule.

■ Such oral statements may be discovered only when they are made "in response to interrogation by any person then known to the defendant to be a government agent." Fed.R.Crim.P. 16(a)(1)(A). *See United States v. Navar,* 611 F.2d 1156, 1158 (5th Cir.1980); *United States v. Rinn,* 586 F.2d 113, 120 (9th Cir.1978), *cert. denied,* 441 U.S. 931, 99 S.Ct. 2051, 60 L.Ed.2d 659 (1979); *United States v. Johnson,* 562 F.2d 515, 518 (8th Cir.1977). Neither McClure nor Tafoya argue that they knew the true identity of the undercover agents when the statements were made. Hence, the district court properly found that the statements were not discoverable under Fed.R.Crim.P. 16(a)(1)(A).

*Bill of Particulars:* Tafoya argues that the two-count indictment was insufficiently

precise to give him notice of the charges against him; he filed a motion for a bill of particulars in order to remedy this problem. The district court, however, found that the indictment was sufficient to apprise Tafoya of the charges and therefore denied the motion. Tafoya asserts that this decision constituted an abuse of discretion by which he was prejudiced.

■ Count I of the indictment charged Tafoya with possession with the intent to distribute cocaine; Count II charged the defendant with delivery of cocaine. The indictment also specified the date of the alleged acts, the district and state within which they occurred, the statutes violated, the elements of the offense, and the names of the coindictees. (R., Vol. I at 1–2.) Although the indictment did not specify the exact place, time of day, or quantity of cocaine involved, we hold that the indictment was "sufficiently complete and precise to enable the defendant to avoid prejudicial surprise and to bar the risk of double jeopardy." *United States v. Barbieri,* 614 F.2d 715, 719 (10th Cir.1980).

■ Even if we were to find the indictment facially insufficient, Tafoya has made no showing that he was actually prejudiced by the absence of the above information. *See United States v. Moore,* 556 F.2d 479, 483 (10th Cir.1977). The record is clear that Tafoya knew, or should have known, the place, time, and quantity of drugs involved. (R., Vol. IV at 31–32 as to place and time, at 22–23 and 41–42 as to quantity.) There is no indication in the record that Tafoya was ever unfairly surprised at trial.

### III.

#### Unanimous Verdict

McClure and Tafoya argue that the court abused its discretion by denying the following instructions tendered by McClure:

The verdict ·must represent the considered judgment of each juror. Your verdict, whether it be guilty or not guilty, must be unanimous. *Furthermore your verdict must represent*

*unanimous agreement on the same theory of guilt;* that is, if some of you think he is guilty on one theory and the rest of you think he is guilty on a different theory, then you have not reached unanimous agreement and your verdict must be not guilty.

(R., Vol. II at 71) (emphasis added).

Instead, the court tendered the following instructions:

A separate crime or offense is charged against each of the Defendants in each count of the indictment. Each offense, and the evidence pertaining to it, should be considered separately .... Any verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous.

(*Id.* at 128–29.)

McClure and Tafoya argue that the court's instruction failed to inform the jury of the requirement of a unanimous verdict. They reason that the jury could have convicted both defendants while being in disagreement as to (1) whether the defendants merely *possessed cocaine with the intent to distribute* or *actually distributed cocaine,* and (2) whether the defendants' actions related to the *pound* or to the *gram* of cocaine. In other words, they argue that the jury might have disagreed about the underlying theory and facts supporting its ultimate finding of guilt.

■ Clearly, the jury did not disagree as to the *theories* under which both defendants were found guilty. Two verdict forms were used for each defendant and the jury found each man guilty of possession with the intent to distribute, *and* of actual distribution. (R., Vol. I at 155–56; R., Vol. II at 131–32.) Having unanimously found both McClure and Tafoya guilty of both possession with the intent to distribute, and actual distribution, we see no prejudice to either defendant in the court's denial of McClure's instruction which would have required jury unanimity as to the theory of guilt.

■ Similarly, we see no merit in the contention that the jury may have disagreed upon the underlying facts supporting the convictions. McClure and Tafoya state that some members of the jury may have convicted on the basis of the pound of cocaine while others may have convicted on the basis of the gram of cocaine. In our view, however, both quantities of cocaine were part of the same "conceptual group," and either amount could have supported the conviction of both defendants. *Cf. United States v. Gipson,* 553 F.2d 453, 458 (5th Cir.1977). Hence, the fact that some members of the jury may have focused upon the pound of cocaine while other members focused upon the gram is a distinction without a difference; regardless of the specific amount of cocaine pinpointed by the individual jury members we hold that their verdict reflected "substantial agreement as to just what [the] defendant did." *Id.* at 457.

In addition, it is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict. *United States v. Murray,* 618 F.2d 892, 898 (2d Cir.1980); *United States v. Friedman,* 445 F.2d 1076, 1084 (9th Cir.1971), *cert. denied,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971). Neither McClure nor Tafoya has made any showing that the jury did not in fact agree upon the underlying facts supporting its verdicts. Neither party suggested that the jury be polled in this regard, and indeed neither party proffered an instruction to the court requiring jury agreement upon the underlying facts. To reverse a conviction based purely upon the abstract possibility of juror disagreement as to certain underlying facts would seem to elevate the unanimity requirement to due process of law—a notion clearly rejected by the Supreme Court. *See Johnson v. Louisiana,* 406 U.S. 356, 359, 92 S.Ct. 1620, 1623, 32 L.Ed.2d 152 (1972); *Jordan v. Massachusetts,* 225 U.S. 167, 176, 32 S.Ct. 651, 652, 56 L.Ed. 1038 (1912); *Maxwell v. Dow,* 176 U.S. 581, 602, 605, 20 S.Ct. 448, 456, 458, 44

L.Ed. 597 (1900). *See also Apodaca v. Oregon,* 406 U.S. 404, 411–12, 92 S.Ct. 1628, 1633–34, 32 L.Ed.2d 184 (1972) (jury unanimity not required by the sixth amendment).

#### IV.

Finally, McClure argues that the district court erred in refusing to allow Tafoya's business partner, Villegas, to testify. The court, it should be recalled, took this action because Villegas had been present in the courtroom throughout the trial in violation of the sequestration rule.

McClure contends that barring Villegas's testimony was too harsh a penalty under the circumstances. He maintains that a mere violation of the rule is insufficient to invoke such a response; rather, there must be some indication that the defendant or his counsel "connived, consented, or procured the violation of the rule." Appellant McClure's Brief at 17. Although we agree that a trial judge may properly consider the good faith of the defendant and counsel in deciding whether or not to allow a witness to testify, such a consideration is certainly not determinative of the issue. As we have noted on previous occasions, the test "is whether permitting the witness to testify, despite his violation of the rule, is an abuse of the trial court's discretion." *United States v. Johnston,* 578 F.2d 1352, 1355 (10th Cir.1978), *cert. denied,* 439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325 (1978). This same test must apply when, as here, the trial court refuses to allow the witness to testify.

We cannot agree with McClure's assertion that he was entirely free from blame in regard to Villegas's presence in the courtroom. McClure admits that he received information the night before the second day of trial suggesting that Villegas owned the gun found in McClure's car. Nonetheless, McClure's counsel failed to bring this to the court's attention until he attempted to call Villegas to the stand well into the proceedings of the second day. Significantly, McClure never requested Villegas's exclusion from the courtroom after learning of his alleged ownership of the gun.

In addition, the government makes a strong argument that Villegas's testimony was cumulative in nature. Detective Ken Neher of the Albuquerque Police Department testified that he was not able to determine who owned the gun and stated that he could not trace its ownership to either McClure or Tafoya. (R., Vol. VI at 187–90.) In addition, McClure testified that neither he nor Tafoya owned the gun. (R., Vol. VII at 31.) The government never sought to prove that McClure owned the gun; only that the gun was present in McClure's car.

Hence, we must conclude that the trial judge did not abuse his discretion in refusing to allow Villegas to testify. We are convinced that McClure and Tafoya received a fair trial.

AFFIRMED.