**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harold Lloyd PHILLIPS,
Defendant–Appellant.**

**No. 87–1007.**

United States Court of Appeals,
Tenth Circuit.

Oct. 17, 1988.

William L. Lutz, U.S. Atty., and James D. Tierney, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Michael G. Katz, Federal Public Defender, and Vicki Mandell–King, Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

Before SEYMOUR and ANDERSON, Circuit Judges, and BROWN,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Harold Lloyd Phillips appeals his conviction on two counts of violating 18 U.S.C. § 2314 which makes it a crime to knowingly and wilfully transport in interstate commerce forged and falsely made securities with intent to defraud. He contends that the district court erred in its instructions to the jury by enlarging and thus amending the charging indictment. Similarly, because of the same instruction, Phillips contends he was deprived of his right to a unanimous jury verdict. Two additional issues are raised: whether the district court abused its discretion in not allowing objections to instructions prior to charging the jury; and whether the district court erred in giving an "on or about" instruction when Phillips' defense was that of alibi. We affirm.

On August 14, 1986 Phillips was charged in a two count superseding indictment with knowingly transporting a forged and falsely made security—two bad checks—in interstate commerce with intent to defraud. The indictment reads as follows:

### Superceding Indictment

The Grand Jury charges:

### Count I

On or about the 11th day of December 1985, at Santa Fe, in Santa Fe County, in the State and District of New Mexico, the defendant, HAROLD LLOYD PHILLIPS, aka Phil Phillips, aka Jimmy Needham, aka J.A. Needham, with unlawful and fraudulent intent, did wilfully cause to be transported in interstate commerce to Santa Fe, in the State and District of New Mexico, from Andrews, Texas, *a falsely made and forged security*, to wit: Check No. 2649 of the United States Vacuumite Corporation account, Account Number 00–3958–6 drawn on the Capital Bank of Santa Fe, dated December 5, 1985, payable to J.A. Needham in the amount of $389.20, on which the signature of the authorized maker was forged and falsely made and the defendant then and there knew said check to be forged and falsely made.

In violation of 18 U.S.C. 2314.

### Count II

On or about the 12th day of December, 1985, at Santa Fe, in Santa Fe County, in the State and District of New Mexico, the defendant, HAROLD LLOYD PHILLIPS, aka Phil Phillips, aka Jimmy Needham, aka J.A. Needham, with unlawful and fraudulent intent, did wilfully cause to be transported in interstate commerce to Santa Fe, in the State and District of New Mexico, from Littlefield, Texas, *a falsely made and forged security*, to wit: Check No. 2470 of the United States Vacuumite Corporation account, Account Number 00–3958–6 drawn on the Capital Bank of Santa Fe, dated December 5, 1985, payable to J.A. Needham in the amount of $389.20, on which the signature of the authorized maker was forged and falsely made and the defendant then and there knew said check to be forged and falsely made.

In violation of 18 U.S.C. 2314.

R.Vol. I, doc. 17 (emphasis added).

At Phillips' trial, the checks in question were introduced. Both checks were signed in the name of George Smith. Store clerks from Andrews and Littlefield, Texas, testified that Phillips had cashed these checks at their places of business representing himself to be the payee, "Jimmy Needham." Evidence was offered to show that Phillips was president of United States Vacuumite Corporation, and that he was the only individual authorized to write checks on the account, that "George Smith" was one of Phillips' favorite deceased uncles,

---

* Honorable Wesley E. Brown, Senior Judge, U.S. District Court, Kansas, sitting by designation.

and that the account had been closed since 1980, five years before the checks were cashed in Texas. Handwriting samples in which Phillips had repeatedly signed the name George Smith were admitted into evidence.

Further, a briefcase similar to one used by Phillips was found in a place where Phillips had been on at least three previous occasions. The briefcase contained blank checks, checks made out to J.A. Needham in the amount of $389.20 drawn on the United States Vacuumite Corporation account at the Capital Bank of Santa Fe, other checks in the names of Sheryl or Phil Phillips, and various maps. The prosecution also produced James Needham at trial. Needham testified that he had known the defendant as both Harold and Phil Phillips for a number of years, but that he had never been an employee of the United States Vacuumite Corporation and had not endorsed the two checks listed in the counts of the indictment, nor had he been in Andrews or Littlefield, Texas in December, 1985.

In his defense, Phillips introduced two witnesses who offered testimony suggesting that at the time he allegedly cashed the checks in Texas, Phillips had been in the state of Washington. In rebuttal, another store clerk testified that on the date in question, in Andrews, Texas at a different store, Phillips presented a check to him for $389.20 drawn on the Capital Bank of Santa Fe account of the United States Vacuumite Corporation. The clerk testified that he observed Phillips endorse the back of the check as J.A. Needham, the payee. A handwriting expert testified that Phillips was the author of the payee endorsement "Jimmy Needham" signed to the back of this check to the exclusion of all others.

## I.

■ The Fifth Amendment requires that a felony defendant be tried only on an offense alleged in a grand jury indictment. *United States v. Miller,* 471 U.S. 130, 135, 140, 105 S.Ct. 1811, 1814, 1817, 85 L.Ed.2d 99 (1985). "Ever since *Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849, was decided in 1887 it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States,* 361 U.S. 212, 215–16, 80 S.Ct. 270, 272–73, 4 L.Ed.2d 252 (1960). Any such amendment effected by the court's instructions would constitute plain error and be reversible per se.

At the end of trial the court instructed the jury that:

"A check is falsely made or forged for the purpose ... of this law and this case if: one, the maker of the check was not authorized to sign on the account of which check was drawn; or two, the check was drawn on a closed account; or three, the check was made payable to a fictitious payee and proof of any one or more of these is sufficient."

R.Vol. IV at 405. Thus, the jury instructions allowed the jury to find the check falsely made and forged if, (1) the maker of the check was not authorized to sign on the account from which the check was drawn; (2) the check was drawn on a closed account; or (3) the check was made payable to a fictitious payee.

Phillips contends that this instruction constitutes a constructive amendment of the indictment on the premise that the indictment referred to a forged signature of the maker but not to a closed account or fictitious payee. We disagree with that premise.

■ In interpreting an indictment, we are governed by practical rather than technical considerations. *United States v. Martin,* 783 F.2d 1449, 1452 (9th Cir.1986) ("Charging documents are tested by whether they apprise the defendant of what evidence he must be prepared to meet.... An indictment should be read in its entirety, construed according to common sense and interpreted to include facts which are necessarily implied.") (citations omitted); *see also United States v. Maggitt,* 784 F.2d 590, 598 (5th Cir.1986) ("An indictment is to be read in light of its purpose, which is to inform the accused of the charges.") (citation omitted). Additionally, where, as in this case, there was no objection to the

evidence, the instructions, or the indictment at trial, the court, in order to preserve judicial efficiency, must construe any ambiguities in the indictment in favor of validity. *United States v. Freeman*, 813 F.2d 303, 304 (10th Cir.1987) (Indictments which are tardily challenged are liberally construed in favor of validity.) (citing *United States v. Watkins*, 709 F.2d 475, 478 n. 2 (7th Cir.1983), and *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977)); *United States v. Joseph*, 781 F.2d 549, 554 (6th Cir.1986) ("When an indictment is challenged for the first time only after verdict, it will be liberally construed in favor of its sufficiency, and there will be no reversal, in the absence of prejudice 'unless the indictment cannot, within reason be construed to charge a crime.' ") (quoting in part *United States v. Hart*, 640 F.2d 856, 857–58 (6th Cir.), *cert. denied*, 451 U.S. 992, 101 S.Ct. 2334, 68 L.Ed.2d 853 (1981)). Finally, as Phillips concedes, since there was no objection at trial, reversal is not justified unless the district court's instruction constituted plain error. Brief of Appellant at 19; *see also* Fed.R.Crim.P. 52; *Freeman*, 813 F.2d at 305 ("Freeman's failure to object to the alleged omission and addition in the instructions at trial precludes us from finding error unless the error cited is plain error under Rule 52(b) of the Federal Rules of Criminal Procedure."). With these factors in mind, we cannot conclude that the trial court's instruction broadened the charge against the defendant beyond that set out in the indictment.

Phillips argues that the final four lines in each count of the indictment restrict the element of falsity to an unauthorized maker's signature; but the language states otherwise. Each count consists of but a single sentence which describes the check and material facts relating to the charge in detail, and concludes with the words "the defendant then and there knew said *check* to be forged and falsely made."

■ The fictitious payee aspect of the check is directly adverted to in each count. The indictment states that the check was made payable to J.A. Needham. The indictment further avers that Phillips used the alias J.A. Needham. Given these two specific details coupled with the averment in the indictment that Phillips knew the checks to be forged and falsely made when he caused them to be transported in interstate commerce, Phillips simply could not have failed to be on notice that the government intended to argue at trial that the check was forged and falsely made because the check's payee was fictitious.

■ This same reasoning applies to the "closed account" segment of the challenged instruction. The indictment specifically indicated that the checks in question were drawn on the United States Vacuumite account, Account Number 00–3958–6, at the Capital Bank of Santa Fe, and were dated December 5, 1985. There was, of course, no such account at that time. Again, given this specificity coupled with the indictment's averment that Phillips knew that the checks were forged and falsely made at the time he caused their transfer, Phillips was clearly on notice of the "closed account" theory of falsity.

The record amply supports the conclusion that the indictment fairly articulated and informed Phillips of these additional theories of how the check was forged or fraudulently made. When the government put on its proof that Needham had no connection with the United States Vacuumite Corporation, and that Phillips identified himself as Needham when cashing the checks, Phillips' counsel interposed no objection, claimed no prejudice, and expressed no surprise. As previously indicated, when the instruction in question was given, counsel expressed no surprise and entered no objection—although objections to other instructions were made. Again, no objection, claim of prejudice, or surprise were expressed by Phillips' counsel when the government put on its proof that the account was nonexistent, and when the court instructed on the point.

■ In short, based upon a fair reading of the indictment as a whole, the contested instruction did nothing more than reflect the allegations contained in the in-

dictment. It did not amend the indictment, and there was no variance in the proof.[1] None of the cases cited to us compel a different conclusion. They all involve fact situations sufficiently different to make them irrelevant here.

## II.

■ On appeal, Phillips raises for the first time the contention that the jury instruction given by the trial court defining "falsely made and forged" deprived him of a unanimous jury verdict.[2] As previously indicated, Phillips did not object at trial to the instruction defining forged and falsely made, nor did he request a more specific instruction than the one given as to the jury's unanimity obligation. We thus also review Phillips objection to the lack of a specific unanimity instruction under the "plain error" standard. *See United States v. Beros,* 833 F.2d 455, 462–63 (3d Cir. 1987); *United States v. Payseno,* 782 F.2d 832, 834 (9th Cir.1986).

In this circuit, as in most others, "it is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict."

---

1. Phillips admits that proof was offered that the bank account was closed, and that the check's payee was fictitious, but, he argues, "there was virtually no evidence presented to the jury with respect to the checks being signed by an unauthorized maker." Thus, Phillips contends that the court's instructions to the jury not only allowed it, but obliged it, to find Phillips guilty on theories which were not set out in the indictment.

However, there is evidence which Phillips overlooks. And "[i]n evaluating the sufficiency of the evidence, we must view the evidence—both direct and circumstantial, together with all reasonable inferences to be drawn therefrom—in the light most favorable to the government." *United States v. Hooks,* 780 F.2d 1526, 1529 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986) (citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Massey,* 687 F.2d 1348, 1354 (10th Cir.1982)). At trial, the jury heard the testimony of Joanne Sterrett, the bookkeeping supervisor for the bank on which the checks were drawn. She testified first that the checking account on which the checks were drawn had been closed for five years at the time the checks were written. The jury might fairly infer, given such testimony, that there can be no authorized signature on an account which has been closed for five years. Second, she testified that the only person authorized to sign checks for the United States Vacuumite Corporation checking account was H.L. or Phil Phillips, the defendant. R.Vol. III at 80. Thus, even if George Smith were associated with Vacuumite, his signature on a Vacuumite check was nonetheless unauthorized. It is not the prosecution's burden in this case to show who forged or falsely made the check or its authorized signature, it only must show that the check was forged or falsely made. *Hampton v. United States,* 504 F.2d 600, 604 n. 3 (10th Cir. 1974), *cert. denied,* 421 U.S. 917, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975).

Finally, even though, as Phillips points out, the handwriting expert did not compare the handwriting exemplars of Phillips with the signature of George Smith appearing on the face of the two disputed checks, sufficient evidence was introduced to allow the jury to do so.

During his testimony, Special Agent Yokum testified that he took handwriting samples from the defendant pursuant to court order. Because one of the suspect signatures on the checks at issue was that of the maker of the check, George Smith, defendant Phillips repeatedly signed the name George Smith as a part of this handwriting sample. These samples were admitted into evidence at trial. "The admitted or proved handwriting of any person [is] admissible, for purposes of comparison, to determine genuineness of other handwriting attributed to such person." 28 U.S.C. § 1731. Thus, the jury was entitled to make such a comparison, and appropriate evidence was admitted by which it could do so. In this case, the jury had in evidence the two checks which were the subject of the indictment and which were signed "George Smith" with which it could compare the proved exemplars from the handwriting sample. Because factfinding of this nature is ultimately the province of the jury, it was certainly entitled to conclude, based on the evidence, that Phillips signed the name "George Smith" to both checks which were the subject of the indictment. *See Strauss v. United States,* 311 F.2d 926, 932 (5th Cir.), *cert. denied,* 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963). In light of the other evidence presented to the effect that George Smith was Phillips' favorite uncle, now deceased, and that no one connected with the Vacuumite Corporation was named George Smith. The jury could fairly make such a determination.

2. For a thoughtful discussion of this general issue *see State v. Russell,* 733 P.2d 162, 175–78 (Utah 1987) (Durham, J., concurring); *see also* Trubitt, *Patchwork Verdicts, Different-Jurors Verdicts, and American Jury Theory: Whether Verdicts are Invalidated by Juror Disagreement on Issues,* 36 Okla.L.Rev. 473, 534–41 (1983).

*United States v. McClure,* 734 F.2d 484, 494 (10th Cir.1984) (citing *United States v. Murray,* 618 F.2d 892, 898 (2d Cir.1980); *see also Beros,* 833 F.2d at 460; *Payseno,* 782 F.2d at 835; *United States v. Williams,* 737 F.2d 594, 614 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *United States v. Johnson,* 713 F.2d 633, 646 n. 14 (11th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1447, 79 L.Ed.2d 766 (1984). Therefore, we assume that the jury unanimously reached a decision as to all factual predicates on which it based Phillips' conviction.

"In the final analysis, 'only common sense and intuition can define the specificity with which the jury must describe the defendant's conduct before it convicts.' Note, *Right to Jury Unanimity on Material Fact Issues,* 91 Harv.L.Rev. 499, 502 (1977). That common sense and intuition, in turn, is informed by the circumstances of the case and the arguments of the parties. In the absence of an appropriate unanimity instruction tendered by the defendant[ ], we will not reverse the convictions on the ground of faulty instruction."

*Williams,* 737 F.2d at 614 (citing *United States v. Pavloski,* 574 F.2d 933, 936 (7th Cir.1978)); *see also United States v. Natelli,* 527 F.2d 311, 324–25 (2d Cir.), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976).

A few circuits have made exceptions to the rule that a general unanimity instruction will be sufficient to guarantee unanimity as to all grounds required to support the verdict,[3] but only the Ninth Circuit has held the lack of a specific unanimity instruction to be plain error. *See Payseno,* 782 F.2d at 836. In *Payseno* the Ninth Circuit, while recognizing the general rule, nonetheless held that when there was a realistic possibility of jury confusion as to the acts which supported the conviction, the lack of a specific unanimity instruction constituted plain error.

Without deciding whether this Circuit would adopt the exception to the rule discussed in *Payseno,* we note that even if it did, a general unanimity instruction would be sufficient here. In *Payseno,* the Ninth Circuit determined that the trial court's jury instruction allowed the jury to convict Payseno on any one of three acts, any one of which would have been sufficient of itself to support Payseno's conviction under the statute. Thus, the Ninth Circuit determined that " '[b]ecause the [separate instances], if they in fact occurred, were separate crimes rather than elements of a single crime, each should have been charged in a separate count of the indictment.' " *Id.* at 835. Because the court allowed the jury to convict Payseno based on any one of these three acts, there was a genuine possibility of jury confusion.

Here, as opposed to *Payseno,* the indictment specified in two counts each specific act for which Phillips was on trial. The act for which Phillips was unanimously convicted on two separate counts by the jury was intentionally causing a forged and falsely made check to travel in interstate commerce. To find Phillips guilty the jury had to determine that the checks were "falsely made and forged," that they were transported in interstate commerce, that Phillips caused the checks to be transported in interstate commerce, and that he did so intentionally. It is true that the jury instruction defining "falsely made and forged" might have allowed some members of the jury to determine that the checks were forged and falsely made in different ways. As indicated, however, that does not go to the crime charged but only to one of several elements.[4]

---

**3.** For example, the Third Circuit has required more specific jury instructions as to unanimity in cases where the statute under which the defendant was charged criminalized a number of different acts, proof was offered at trial by which the jury might have concluded that the defendant committed any one of several of these acts, and the district court rejected the defendant's request at trial for a specific unanimity instruction. *See Beros,* 833 F.2d at 458–62; *Cf. United States v. Gipson,* 553 F.2d 453 (5th Cir.1977).

**4.** The dissent asserts that the trial court instructed the jury that it could find Phillips guilty of *forgery* if it found that the check was forged or falsely made in any of the three ways previously defined. This mischaracterization of § 2314 may be at the root of the dissent's inability to

The different methods in which the check might have been forged and falsely made did not constitute separate crimes for which Phillips was charged, or for which he could have been convicted under the indictment, they constituted different ways in which a single element of the crime for which he was charged might have been fulfilled. By giving the jury instruction of which Phillips and the dissent now complain, the court did not allow the jury to consider multiple charged criminal acts any one of which, standing alone, would be sufficient to convict under the statute. Thus, here, unlike *Payseno,* the unanimous verdict requirement is satisfied. "A common tool to guarantee a unanimous verdict is the indictment. An indictment charging only one offense [in particularized counts] guards against a conviction on a less than unanimous verdict." *Williams,* 737 F.2d at 613.[5]

The effect of the dissent's position would be that a jury must not only decide unanimously that the defendant committed one of the particular criminal acts for which he was charged, but that it is plain error for a trial court not to give a specific unanimity instruction where there is any possibility in the record that the jury could differ as to any part of the evidence offered to prove any element of the charged offense. None of the cases on which Phillips or the dissent relies has gone so far, *see Beros,* 833 F.2d at 455; *Payseno,* 782 F.2d at 832; *Echeverry,* 719 F.2d at 974; *Gipson,* 553 F.2d at 453, and we have previously rejected that argument in this circuit. *See McClure,* 734 F.2d at 494 ("To reverse a conviction based purely upon the abstract possibility of juror disagreement as to certain underlying facts would seem to elevate the unanimity requirement to due process of law—a notion clearly rejected by the Supreme Court");

*United States v. Barton,* 731 F.2d 669, 673 (10th Cir.1984) ("The court's general instruction requiring unanimity as to whether Barton committed the proscribed act with which he was charged ... was sufficient").

Thus, even if *Payseno* were applicable in this circuit this case does not present the kind of jury confusion which would require a specific unanimity instruction. *See, e.g., United States v. Schiff,* 801 F.2d 108, 114–15 (2nd Cir.1986); *cert. denied,* 480 U.S. 945, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987) (distinguishing *Payseno* and applying the general rule because the different acts on which the jury could convict in *Payseno* were so divergent). Therefore, because the trial court instructed the jury concerning its general unanimity obligation, and because this case does not fit into the *Payseno* exception to the general rule accepted by the Ninth Circuit, the lack of a specific unanimity instruction in this case was not plain error. Consequently, we hold, as we must, that the general unanimity instruction given the jury in this case was sufficient to guarantee a unanimous verdict as to all specifications required to support the convictions of Phillips.

### III.

Phillips' last two assertions of error do not require detailed discussion. First he argues that the court failed to comply with Fed.R.Crim.P. 30 by not allowing him to object to the instructions prior to reading them to the jury. Fed.R.Crim.P. 30, however, does not require that a defendant be allowed to object to instructions before they are read to the jury. It merely requires that if the defendant is to preserve error based on the instructions, he must

grasp this issue because Phillips was neither convicted nor charged with forgery nor was it necessary for the jury to find that Phillips personally forged or fraudulently made the check at issue to find him guilty of violating § 2314. *See Hampton v. United States,* 504 F.2d 600, 604 n. 3 (10th Cir.1974), *cert. denied,* 421 U.S. 917, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975).

**5.** The other two cases in which the Ninth Circuit found the lack of a specific unanimity instruc-

tion to be plain error are similarly distinguishable. *See United States v. Gilley,* 836 F.2d 1206, 1213 (9th Cir.1988); *United States v. Echeverry,* 698 F.2d 375, 377 (9th Cir.1983), *modified,* 719 F.2d 974 (9th Cir.1983). As we have detailed in part one of this opinion, however, the acts which were the basis of both counts of this indictment were specified with considerable particularity.

object "before the jury retires to consider its verdict."

In the instant case, the court provided such an opportunity. It read the instructions to the jury, and then excused them, but specifically directed that they were not yet to begin their deliberations. At this time, it considered objections to the instructions from counsel. Phillips objected generally to not being able to object to jury instructions until after they had been read to the jury, he objected to the reading of the "on or about" instruction, and he pointed out an error that the court had made in reading the instructions to the jury.

In response, the court indicated that its practice of taking objections to the instructions after they were read to the jury was dictated by this circuit. *See* R.Vol. IV at 417, *see also Dunn v. St. Louis–San Francisco Ry. Co.*, 370 F.2d 681, 683–84 (10th Cir.1966). It disagreed with Phillips' objection to the "on or about" instruction and declined to change it, and it recalled the jury to correct its previous error in reading the jury instructions. The court then instructed the jury to begin its deliberations and the jury was excused. This was all that Fed.R.Crim.P. 30 requires.

We note parenthetically that *Dunn* does not *require* objection to the court's instructions to be taken after the instructions are given to the jury. To the extent that it has been so read it has been persuasively criticized. *See United States v. Wright*, 542 F.2d 975, 982–83 (7th Cir.1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed. 2d 790 (1977); *see also United States v. Hollinger*, 553 F.2d 535, 542–43 (7th Cir. 1977) (approving the practice disapproved in *Dunn* ); 2 C. Wright & A. Miller, *Federal Practice and Procedure*, § 484 at 705–06 (2d ed. 1982).

■ Finally, Phillips was not harmed by the trial court's reading of instruction number twelve—the "on or about" instruction. The court instructed the jury that the indictment charged that the checks at issue were transported in interstate commerce— delivered to the bank on which they were drawn in Santa Fe—"on or about" certain dates. The court further instructed the

jury that if it found that the offense was committed on those dates or "dates reasonably near the dates alleged," it could find the defendant guilty. The counts of the indictment alleged that these dates were on or about the eleventh and twelfth of December 1985. Thus, the jury instruction permitted the jury to find Phillips guilty if it found that the checks were delivered to the bank at Santa Fe "on or about" the eleventh and twelfth.

Phillips' main theory of defense at trial was that of alibi; he contended that he was not in Texas on the days that the checks were cashed, December sixth and seventh. Because his alibi defense involves specific days, he claims that the instruction permitting the jury to find him guilty by finding that the offenses were committed on dates "reasonably near the dates alleged" deprived him of his alibi defense.

In *United States v. Lucero*, 601 F.2d 1147, 1150 (10th Cir.1979) we rejected a similar claim, by noting that the "on or about" instruction related to the date on which the "forged securities were passed in interstate commerce," not to the presence of the defendant where and when the government alleged that the defendant personally transferred the money orders. *Lucero*, as Phillips concedes, relates directly to this case in that the "on or about" instruction here refers to the date on which the checks were transmitted in banking channels across state lines, not to the date on which Phillips cashed the checks. Phillips, however, asks us to reconsider our decision in *Lucero*. After having done so we reaffirm its result. Accordingly, we find that the district court did not err by delivering its on or about instruction in this case.

Because we find that the district court committed none of the errors alleged by Phillips, his conviction is AFFIRMED.

SEYMOUR, Circuit Judge, dissenting.

In my judgment, the trial evidence and the jury instructions in this case lead to the inescapable conclusion that Phillips was denied both his right to be tried only on an

indictment returned by a grand jury, and his right to a unanimous jury verdict. In its zeal to uphold a conviction that is fatally flawed in these two constitutional respects, the majority wishes these problems away by mischaracterizing the issues, misreading the indictment, and relying on inapposite cases. Because I find the majority opinion legally and logically unsound, I respectfully dissent.

## I.

The right to be tried only upon charges considered and returned by a grand jury is not a constitutional curiosity that the passage of time has rendered obsolete. In a recent discussion of the issue, the Supreme Court reaffirmed the "importance of a grand jury's intervention as 'a substantial safeguard against oppressive and arbitrary proceedings,'" and pointedly observed that "'the grand jury is designed to interpose an independent body of citizens between the accused and the prosecutor and the court.'" *United States v. Miller*, 471 U.S. 130, 143 n. 7, 105 S.Ct. 1811, 1819 n. 7, 85 L.Ed.2d 99 (1985) (citations omitted). The Court confirmed the continuing vitality of "[t]he proposition that a defendant cannot be convicted of an offense different from that which was included in the indictment." *Id.* at 142, 105 S.Ct. at 1818. In so doing, the Court condemned practices by which

> "'the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.'"

*Id.* at 142–43, 105 S.Ct. at 1818 (quoting *Ex parte Bain*, 121 U.S. 1, 10, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887)).

The superseding indictment in this case charged Phillips as follows:

### "COUNT I

"On or about the 11th day of December 1985, at Santa Fe, in Santa Fe County, in the State and District of New Mexico, the defendant, HAROLD LLOYD PHILLIPS, aka Phil Phillips, aka Jimmy Needham, aka J.A. Needham, with unlawful and fraudulent intent, *did willfully cause to be transported in interstate commerce* to Santa Fe, in the State and District of New Mexico, from Andrews, Texas, *a falsely made and forged security, to wit: Check No. 2649* of the United States Vacuumite Corporation account, Account Number 00–3958–6 drawn on the Capital Bank of Santa Fe, dated December 5, 1985, payable to J.A. Needham in the amount of $389.20, *on which the signature of the authorized maker was forged and falsely made* and the defendant then and there knew said check to be forged and falsely made.

"In violation of 18 U.S.C. 2314.

### "COUNT II

"On or about the 12th day of December, 1985, at Santa Fe, in Santa Fe County, in the State and District of New Mexico, the defendant, HAROLD LLOYD PHILLIPS, aka Phil Phillips, aka Jimmy Needham, aka J.A. Needham, with unlawful and fraudulent intent, *did willfully cause to be transported in interstate commerce* to Santa Fe, in the State and District of New Mexico, from Littlefield, Texas, *a falsely made and forged security, to wit: Check No. 2470* of the United States Vacuumite Corporation account, Account Number 00–3958–6 drawn on the Capital Bank of Santa Fe, dated December 5, 1985, payable to J.A. Needham in the amount of $389.20, *on which the signature of the authorized maker was forged and falsely made* and the defendant then and there knew said check to be forged and falsely made.

"In violation of 18 U.S.C. 2314."

Rec., vol. I, doc. 17 (emphasis added).

The Government presented evidence at trial that the Vacuumite checking account upon which the checks were drawn had been closed long before the date on which the checks were written. Two store clerks identified Phillips as the person who had cashed the checks, and testified that Phillips had represented himself as J.A. Needham, the payee. The Government also in-

troduced evidence that George Smith, the maker of the checks, was not an authorized maker on the signature card for the closed Vacuumite account. The Government's handwriting expert, who was asked to compare Phillips' handwriting with the J.A. Needham endorsement signature on the two subject checks, gave his qualified conclusion that there was a slight possibility Phillips had endorsed the checks. When questioned by the court out of the presence of the jury, the expert stated that he could not give an opinion as to whether the maker of the checks was the same person who endorsed the checks.

The court asked the Government what evidence demonstrated that the checks were forged and falsely made. The Government responded by pointing to the testimony that Phillips had used a fictitious name in representing himself to be the payee Needham. After the parties had rested, the court again requested the Government to state precisely "what its theory is in reference to what constitutes the conduct of the defendant, the alleged conduct of the defendant, which violates the language of the statute; falsely made or forged." Rec., vol. IV, at 350. The Government answered that Phillips had violated the statute because the checks had an unauthorized signature as maker, or had a fictitious payee, or were drawn on a non-existent account. Significantly, the Government further stated that these were alternative theories, any one of which would support defendant's conviction.

The court's jury instruction tracked the Government's alternative theories of violation by stating that:

"A check is falsely made or forged for the purpose ... of this law and this case if: one, the maker of the check was not authorized to sign on the account of which check was drawn; or two, the check was drawn on a closed account; or three, the check was made payable to a fictitious payee and *proof of any one* or more *of these is sufficient.*

*Id.* at 405 (emphasis added).

Phillips contends on appeal that the above instruction constitutes a constructive amendment of the indictment.[1] In my judgment, the record in this case makes such a conclusion unavoidable. "An indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *United States v. Apodaca,* 843 F.2d 421, 429 (10th Cir.1988). The indictment here set forth a single theory of criminal liability by charging that the statute was violated because the signature of the maker was forged and falsely made. The Government argued at trial, however, that Phillips had violated the statute not only because the maker was unauthorized, but alternatively because the payee was fictitious, and/or the account was non-existent. The evidence and the court's instructions encompassed these latter two means of violating the statute even though they had not been set out in the indictment. Phillips was thus subjected to criminal liability on facts and theories not returned by the grand jury. Other courts have construed analogous expansions of an indictment as impermissible constructive amendments. *See United States v. Adams,* 778 F.2d 1117, 1124–25 (5th Cir.1985) ("when only one particular kind of falsity is charged to have been made ..., a conviction must rest on that charge and not another"); *United States v. Yeo,* 739 F.2d 385, 386–87 (8th Cir.1984) (defendant cannot be convicted under instruction including extortionate acts not set out in indictment); *United States v. Cusmano,* 659 F.2d 714, 719 (6th Cir.1981) (defendant charged with extortion through threat of economic loss cannot be convicted

---

**1.** In its brief on appeal, the Government simply did not respond to Phillips' contention that a constructive amendment occurred. Instead, it criticized Phillips for not objecting to the indictment before trial, an absurd argument in that the error Phillips raises did not take place until the trial. The Government also argued that the instructions correctly stated the law and were supported by the evidence. Assuming these two facts to be true, they have no bearing on Phillips' assertion that the evidence and instructions impermissibly broadened the basis of his criminal liability from that set out in the indictment.

under instruction including threats of physical violence), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984); *United States v. Jones,* 647 F.2d 696, 700 (6th Cir.) (defendants charged with illegally making and constructing a bomb cannot be convicted under instruction on illegally possessing a bomb), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981). In the instant case, as in those cited above, the instructions constructively amended the indictment by expanding the bases of criminal liability.

The majority does not distinguish or even acknowledge these highly relevant decisions. Instead, the majority relies on the language in four cases, all of which concern the facial sufficiency of an indictment and none of which address the issue of constructive amendment. *See United States v. Freeman,* 813 F.2d 303, 304–05 (10th Cir.1987); *United States v. Maggitt,* 784 F.2d 590, 598 (5th Cir.1986); *United States v. Martin,* 783 F.2d 1449, 1452 (9th Cir.1986); *United States v. Joseph,* 781 F.2d 549, 554 (6th Cir.1986). In each of these cases, the defendant alleged that the indictment or information was deficient on its face because it failed to set out the elements of the crime of which he was convicted. The issue in each case was thus whether the indictment or information provided the defendant with adequate notice of the charges against him. The discussion in those cases cited and quoted by the majority dealt solely with the issue of notice, and simply has no bearing on an assertion of constructive amendment.

The majority's concern with notice appears to derive from its belief that the indictment gave Phillips sufficient notice of a possible fictitious payee and a closed account, and that the grand jury therefore necessarily had to have considered and returned those charges. Not surprisingly, the majority cites no authority for this novel approach. The fundamental flaw in the majority's analysis is its attempt to equate the issue of notice with the issue of constructive amendment. Indeed, except for a perfunctory reference to the right to be tried only on an indictment returned by a grand jury, a reader of the majority's analysis and authorities would conclude that Phillips had alleged a facially insufficient indictment, rather than the constructive amendment of an indictment the facial validity of which he has not challenged. Although two of the purposes of an indictment are to provide a defendant with notice of the charges against him and to ensure that he is tried only on charges found by a grand jury, these two functions are separate. They involve different considerations and different dispositive factors. *See generally United States v. Radetsky,* 535 F.2d 556, 561–65 (10th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976), (distinguishing between notice and grand jury guaranty). Even assuming that the indictment at issue here gave Phillips some notice of the Government's intent to present evidence of an unauthorized payee and a closed account—an issue not as clear as the majority would have it—that question is simply irrelevant to whether the grand jury actually returned those charges upon a finding of probable cause.

As the majority emphasizes, the indictment alleges that Phillips was also known as J.A. Needham and that the checks were payable to J.A. Needham. However, a check is not forged or falsely made when it is payable to a person using a fictitious name if the maker intends the check to be paid to that person.[2] The grand jury, while obviously believing that Phillips sometimes used the name Needham and that the check was made out to Needham, nonetheless did not charge that an otherwise genuine check was forged or falsely made because a fictitious payee was inserted to enable an *unauthorized payee* to cash the check. *See, e.g., Gearing v. United,* 432 F.2d 1038, 1041 (5th Cir.1970), *cert. denied,* 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). Rather, the grand jury specifically charged

---

**2.** Under the definition of "fictitious payee" in Black's Law Dictionary, it is stated:

"Negotiable instrument is drawn to fictitious payee whenever payee named in it has no

right to it, and its maker does not intend that such payee shall take anything by it."
Black's Law Dictionary 562 (5th ed. 1979).

an *unauthorized maker.* I do not believe that the mere recitation of "aka J.A. Needham" and "payable to J.A. Needham" constitutes a grand jury charge that the check was forged and falsely made because the payee was fictitious. If anything, the grand jury's refusal to make such a specific charge, despite its belief that Phillips used the name J.A. Needham, should be viewed as a grand jury finding that probable cause did *not* exist to charge a forged or falsely made check resulting from a fictitious payee.

An even more untenable result of the majority's analysis is the conclusion that the grand jury charged a *closed* account by merely reciting, without more, the account number and the bank. When the grand jury charges a statutory violation by specific conduct, courts and prosecutors are simply not at liberty " 'to change the charging part of an indictment to suit [their] own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes.' " *Stirone v. United States*, 361 U.S. 212, 216, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (quoting *Ex parte Bain*, 121 U.S. at 10, 7 S.Ct. at 786). As discussed, above, the majority's "notice" theory of constructive amendment achieves exactly the result proscribed in *Stirone.*

Finally, the majority's analysis here is contrary to our decision in *United States v. Sloan*, 811 F.2d 1359 (10th Cir.1987). There the defendant was indicted for kidnapping the victim by force in violation of 18 U.S.C. § 1201.[3] However, the court in *Sloan* instructed the jury that " '[w]hoever unlawfully seizes, confines, *inveigles, decoys*, kidnaps, or carries away ... any person' is guilty of violating 18 U.S.C. § 1201." *Id.* at 1363 (emphasis added in *Sloan* ). The evidence in the case was equivocal regarding the use of force and tended to indicate that the victim initially complied with the defendant's wishes be-

cause of a falsehood he told her. *Id.* Citing *Stirone,* we reversed the conviction because "[t]he defendant was not *charged* with inveigling or decoying his victim. The indictment charged that the victim was 'seized, abducted, confined, and kidnapped,' and the expedient of instructing the jury in the language of the statute violated the Fifth Amendment by effectively adding elements not charged." *Id.*

I can see no significant distinction between *Sloan* and this case. The elements of a violation of section 1201, in addition to the interstate component, are "(1) knowing and willful kidnapping, [and] (2) an intent to gain a benefit from that seizure." *United States v. Crosby*, 713 F.2d 1066, 1070 (5th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). "Comprehensive language was used [in the statute] to cover every possible variety of kidnapping followed by interstate transportation." *Chatwin v. United States*, 326 U.S. 455, 463, 66 S.Ct. 233, 237, 90 L.Ed. 198 (1946). Presumably the indictment in *Sloan* set out the date of the alleged kidnapping and other pertinent details, just as the indictment here gave the number of the falsely forged check, the account on which it was drawn, and other details. But here, as in *Sloan,* the grand jury particularized how the statute was violated and because it did so, *Stirone* and *Sloan* tell us that it is a violation of the Fifth Amendment for the trial court " 'to change the charging part of an indictment to suit its own notions of what it ought to have been.' " *Sloan*, 811 F.2d at 1363 n. 6 (quoting *Stirone*, 361 U.S. at 216, 80 S.Ct. at 273).

In sum, I would reverse on the ground that the indictment in this case was constructively amended in violation of the Fifth Amendment.

II.

Even if I believed that the indictment had not been constructively amended, I

---

**3.** Section 1201 provides in relevant part:

"(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:

"(1) the person is willfully transported in interstate or foreign commerce;

. . . .

shall be punished by imprisonment for any term of years or for life."

could not vote to affirm the conviction because Phillips was denied his right to a unanimous jury verdict. The court instructed the jury that it could find Phillips guilty of forgery if he committed any one of three distinct acts: (1) passing a check with an unauthorized signature, (2) passing a check on a closed account, or (3) passing a check made payable to a fictitious payee. The court did not tell the jury that it had to agree unanimously on at least one of these theories. The prosecution presented considerable proof that Phillips committed the latter two acts and arguably presented sufficient evidence to support a conclusion that he passed a check with an unauthorized signature as well. *See* maj. op. at 1366 n. 1. Thus, a genuine possibility exists that the jury did not unanimously agree on what criminal act Phillips committed. Under these circumstances, the court's failure to instruct the jury that each member had to agree that Phillips committed the same criminal act constitutes reversible error. *United States v. Beros*, 833 F.2d 455, 461 (3rd Cir.1987); *United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir. 1983).

Fed.R.Crim.P. 31(a) governing verdicts in federal criminal trials states that "[t]he verdict shall be unanimous." This practice is so well settled that a majority of the Supreme Court held in the companion cases of *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) and *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), that a unanimous jury verdict requirement is implicit in the Sixth Amendment. *See* 406 U.S. at 395, 92 S.Ct. at 1650 (Brennan, J., dissenting) ("a majority of the Court agrees that the Sixth Amendment requires a unanimous verdict in federal criminal jury trials").[4] As Justice Powell articulated:

"In an unbroken line of cases reaching back into the late 1800's, the Justices of [the Supreme] Court have recognized, virtually without dissent, that unanimity is one of the indispensable features of *federal* jury trial. In these cases, the Court has presumed that unanimous verdicts are essential in federal jury trials, not because unanimity is necessarily fundamental to the function performed by the jury, but because that result is mandated by history. The reasoning that runs through [the] Court's Sixth Amendment precedents is that, in amending the Constitution to guarantee the right to jury trial, the framers desired to preserve the jury safeguard as it was known to them at common law. At the time the Bill of Rights was adopted, unanimity had long been established as one of the attributes of a jury conviction at common law. [I]n accord both with history and precedent, ... the Sixth Amendment requires a unanimous jury verdict to convict in a federal criminal trial."

*Id.* at 369–71, 92 S.Ct. at 1635, 1637–38 (citations and footnotes omitted). Although a majority of the Court has held that the unanimity requirement does not apply to the states, the Court has unanimously agreed that no verdict can withstand constitutional scrutiny if less than six jurors can agree. *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979) (six person jury must be unanimous); *see Ballew v. Georgia*, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978) (Sixth Amendment requires at least six jurors in criminal trial).

The instructions in the instant case not only permitted the jury to return a nonunanimous verdict of guilty, but actually allowed a conviction if only four jurors agreed upon any one criminal act committed by Phillips. For example, four jurors

---

**4.** In *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), Justices Burger, White, Blackmun and Rehnquist concluded that the Sixth Amendment does not require jury unanimity and accordingly approved a state court conviction based on a less-than-unanimous verdict. Justices Douglas, Brennan, Marshall, and Stewart concluded that a unanimous verdict is an essential element of the Sixth Amendment

right to a jury trial, and that this right was made applicable to state criminal trials by the Fourteenth Amendment. Justice Powell concluded that although the Sixth Amendment requires a unanimous verdict in federal trials, this requirement is not incorporated into the Due Process Clause of the Fourteenth Amendment, and therefore does not apply to the states.

may have believed that Phillips passed a check with a forged signature, but not that he passed a check on a closed account or one payable to a fictitous payee; four jurors may have believed that Phillips cashed a check on a closed account, but not that he committed the other two acts; and finally, four jurors may have believed that Phillips only criminal act was passing a check made payable to a fictitious payee. *Cf. United States v. Gipson,* 553 F.2d 453, 458 n. 8 (5th Cir.1977) (presenting a similar example).

The Supreme Court has never defined what is meant by a unanimous jury verdict. Most importantly for this case, the Court has never decided whether a defendant's right to a unanimous jury verdict is denied where a criminal statute provides a number of ways of satisfying the actus reas element of the offense charged and not all members of the jury agree upon which act the defendant committed although they agree he committed one of the prohibited acts. "A superficial analysis of the problem might yield the conclusion that since every juror was still required to find all elements of the charged offense present in order to convict the defendant, there was necessarily unanimous jury agreement as to his guilt." *Gipson,* 553 F.2d at 457. This simplistic analysis has been roundly rejected, however, because it conflicts with the proper interpretation of the function of the jury and the desirability of a unanimous verdict. The Third, Fifth, and Ninth Circuits have explicitly rejected the view that if the jury is in complete agreement as to the defendant's guilt, and sufficient evidence supports a finding of guilt under some applicable theory, an appellate court must affirm the conviction.[5] *Beros,* 833 F.2d at 461; *United States v. Payseno,* 782 F.2d 832, 834–37 (9th Cir.1986); *Gipson,* 553 F.2d at 457–58. In the words of Judge Higgenbotham,

"Just as the sixth amendment requires jury unanimity in federal criminal cases on each delineated offense that it finds a defendant culpable, ... it must also require unanimity regarding the specific act or acts which constitutes that offense. Absent such certainty, the unanimity requirement would provide too little protection in too many instances."

*Beros,* 833 F.2d at 461 (citation omitted).

In my judgment, this conclusion is undoubtedly correct. While it is true that within our legal system a unanimous jury has the unconstrained power to pronounce a defendant innocent of the charges against him no matter how compelling the government's proof, the jury has no similar power to find a defendant guilty. Criminal sanction requires at least two distinct elements: the defendant must possess the requisite criminal intent, mens rea; and he must have committed a criminal act, actus reas. If only the former requirement were relevent, the role of the jury might be limited to the ultimate question of guilt, because a unanimous finding of guilt necessarily connotes unanimous agreement that mens rea existed. Within the American criminal justice system, however, a jury may not pronounce a man guilty solely because it unanimously believes he has the requisite criminal intent necessary to violate a statute. It must also find that he committed a criminal act prohibited by the statute. *Cf. Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939) (holding statute unconstitutionally vague for failure to condemn a specific act or omission). Thus, the constitutional right to trial by jury is the right "to have a jury pass on the ultimate question of guilt or innocence *and* to ascertain the facts relevant to that determination." 2 W. LaFave & J. Israel, Criminal Procedure § 21.1 (Supp.1987) (emphasis added).

---

5. The issue Phillips raises in this case is distinct from a challenge to the sufficiency of the evidence.

   "[A]bsent competent evidence to the contrary, a court has no reason to assume that an inconsistent or compromise verdict is not unanimous, and therefore has no justification for inquiring into the logic behind the jury's verdict. The situation here is different. [The defendant's] non-unanimity challenge is based not on the result reached by the jury, but on a court instruction that may have judicially sanctioned a non-unanimous verdict."

   *Gipson,* 553 F.2d at 457 (footnote omitted).

Because the jury's prerogative to pronounce a man guilty is limited in these two ways, I can imagine no rationale that would render constitutionally unnecessary a unanimous verdict as to a federal defendant's particular criminal act. Because a criminal sanction can only be justified by a finding of a criminal intent *and* a criminal act, and a reliable intent finding requires agreement by twelve members of a federal defendant's community, logic requires us to conclude that similar agreement as to that defendant's criminal act is constitutionally required. *See* Case Comment, *Right to Jury Unanimity on Material Fact Issues: United States v. Gipson,* 91 Harvard Law Review 499, 501 (1977) ("The Fifth Circuit was correct in holding that the sixth amendment requires that a federal jury conviction rest upon a consensus on a specific *actus reas,* in addition to a general agreement on the guilt of the defendant.").

Judge Wisdom, writing for the court in *Gipson,* recognized a twofold problem with an *unqualified* requirement of unanimity as to criminal act. First, the distinction between certain acts may be no more than subjective conceptualization. For example, "[t]he single act of keeping a vehicle in a certain place may constitute both concealing and storing." *Gipson,* 553 F.2d at 458. Similarly, the difference between two acts may be no more than a definitional distinction. For example, "[o]ne juror may view a defendant's actions in housing a stolen vehicle as receiving, while another juror may conclude that the same actions constitute concealing or storing." *Id.* The Fifth Circuit suggested in *Gipson* that such distinctions should not be deemed to undermine the unanimity of the jury's verdict. I agree, because this conclusion necessarily assumes that the jury unanimously agreed as to the defendant's actual behavior, although its members may not have agreed to the name attached to that behavior.

The problem recognized in *Gipson* is not relevant to the instant case. The three acts prohibited by the statute under which Phillips was tried, although they could all be performed at the same time, are conceptually and definitionally distinct. Differentiating between passing a check with an unauthorized signature, passing a check on a closed account, and passing a check made payable to a fictitious payee "presents neither the conceptualization nor the characterization problems posed by distinguishing" between storing and receiving stolen merchandise. *Gipson,* 553 F.2d at 458. "The individual jurors and the collective jury could be expected to perceive and understand" the distinctions between the three relevant acts in this case. *Id.* In other words, Phillips' jury found that he cashed a check, but the relevant criminal act was not cashing a check but doing so in one of three proscribed ways. Since the instructions permitted the jury to return a verdict of guilty without agreement on which of the proscribed acts the defendant did, and rational jurors could easily distinguish between those acts, the omission of a specific unanimity instruction constituted constitutional error.

This circuit's two previous encounters with the unanimous jury issue constitute a larger obstacle to the adoption of my position by a panel of this court. In *United States v. McClure,* 734 F.2d 484, 494 (10th Cir.1984), we upheld a conviction where the instructions permitted the jury to find the defendant guilty if some of the jurors believed that he possessed a pound of cocaine and others believed he possessed a separate package containing a gram. Similarly in *United States v. Barton,* 731 F.2d 669 (10th Cir.1984), we upheld a conviction where the instructions permitted the jury to find the defendant guilty of possession of a firearm if he possessed it during one of two specific transactions. In both cases, we purported to adopt *Gipson's* reasoning, but to distinguish its facts. Unlike *Gipson* and every other circuit court opinion to address the issue, however, our opinions adopted the maxim that as long as the jurors probably agreed that the defendant did some prohibited act at some time or other, the verdict must stand.[6] *McClure,*

---

6. In *McClure,* we also held that a general unanimity instruction must be presumed adequate.

734 F.2d at 494 (holding unanimous finding of connection to cocaine sufficient); *Barton*, 731 F.2d at 673 (holding unanimous finding of possession sufficient). To the extent that *McClure* and *Barton* prevent this court from adopting my position, I believe that we should reconsider their reasoning.

In sum, I would follow the well reasoned decisions of the Third, Fifth, and Ninth Circuits, and hold that the verdict in a federal trial must be unanimous as to the criminal act of the defendant.

I would reverse.

This portion of our panel opinion (if not the entire opinion) must be viewed with some suspicion, however, because the panel members labored under the mistaken impression that a unanimous jury verdict was not constitutionally required. *See McClure*, 734 F.2d at 495 (incorrectly citing *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), for the proposition that "jury unanimity not required by the sixth amendment" when in fact five justices concluded otherwise).