**F I L E D**

**UNITED STATES COURT OF APPEALS**

**August 28, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ARTHUR EARL TAYLOR,

Defendant - Appellant.

No. 05-5224

(N. D. Okla.)

(D.C. No. 05-CR-023-001-HDC)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

Arthur Earl Taylor was charged in a one-count indictment in the United States District Court for the Northern District of Oklahoma with possession of a firearm and ammunition by a convicted felon, *see* 18 U.S.C. §§ 922(g)(1).  He was convicted by a jury and sentenced to 188 months' imprisonment.  On appeal

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

he contends that the indictment was improperly duplicitous because it charged him with two or more separate offenses in the same count. We affirm.

## I.      BACKGROUND

Mr. Taylor was charged with illegally possessing a firearm and ammunition between September 19, 2004, and September 30, 2004. The possession began when Mr. Taylor broke into an unoccupied house between September 16 and 19 and stole a gun and ammunition. It ended at about 11 p.m. on the night of September 29, when he showed police officers where he had secreted the gun. The police officers had gone to Mr. Taylor's house upon receiving a tip; after speaking with the officers, Mr. Taylor took them to an abandoned car in the backyard of a nearby house. Inside the car the officers found a bag containing a gun and two loaded ammunition clips. Mr. Taylor afterwards provided the following written statement to the police:

> About two weeks ago I went into a house which the front door was standing wide open and I went in and saw a bunch of stuff scatered all over the dining room floor. A couple of days I had broken my right little toe and my toe was bothering me realy bad and I took my boots off. I then went through the kitchen into the bedroom, my keys got caught on the striker plate and broke the ring on my keys were hanging from and I layed them on a weight bench. I look in the closet and on the top shelf was a gun box. I grabed it and went out the back door was unlocked and I left.

Aplt. Br. Ex. C.

During closing arguments at trial the prosecutor distinguished between actual and constructive possession, stating that "in this instance . . . we know that

the defendant had both actual possession of the firearm as well as constructive possession, both the power and ability to exercise dominion and control over the firearm." R. Vol. IV at 131. He then cited four instances of actual possession—when Mr. Taylor took the gun from the house, when he took it out of its case, when he placed it in a bag, and when he placed it in the back of the car in which it was eventually discovered. The prosecutor stated that Mr. Taylor was in constructive possession of the gun while the gun was in the car.

## I.    DISCUSSION

Mr. Taylor acknowledges that "possession 'is a course of conduct; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm.'" Aplt. Br. at 7 (quoting *United States v. Rivera*, 77 F.3d 1348, 1351 (11th Cir. 1996)). But he argues that the prosecutor's closing statement rendered the indictment (which had previously been sound) duplicitous because "the government did not argue that the possession was a single continuous event. Instead, the government identified differing 'instances' or 'times' when possession occurred." Aplt. Br. at 7. Mr. Taylor contends that the "argument erroneously converted the charge into multiple offenses, contrary to the requirement that a count charge a single crime." *Id*. at 8.

We must first decide the standard under which to review Mr. Taylor's claim that the indictment was rendered defective. Mr. Taylor admits that he "did not

raise any objection or contention in district court that the Indictment was defective." *Id.* at 6. But he argues that his claim should be reviewed de novo rather than under the plain-error standard "[b]ecause the event which ripened the error occurred at the time of the government's closing arguments, [so] it was impossible for the Defendant to file a pre-trial motion to preserve error." *Id.* at 9. While this may be true, nothing prevented Mr. Taylor from objecting at the time the alleged error occurred, and he did not do so. We thus review his claim under the plain-error standard. *See United States v. Phillips*, 869 F.2d 1361, 1365 (10th Cir. 1988). On plain-error review we will reverse the judgment below only if "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc).

We have previously stated the rationale behind prohibiting duplicitous indictments:

> The dangers of duplicity are three-fold: (1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence.

*United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998) (internal quotation marks omitted). Mr. Taylor's argument on appeal points only to the first danger; he contends that the closing argument was problematic because

-4-

"[t]he jurors' votes could have been distributed among the various discrete possession acts identified by the government, without a unanimous consensus that the Defendant committed a single possession continually during the period charged in the indictment." Aplt. Br. at 9-10.

Even if we assume that Mr. Taylor's claim passes the first two prongs of the plain-error test, it does not survive the third prong, which requires that his substantial rights be affected. In order for an error to affect the defendant's substantial rights, it "must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). The defendant bears the burden of showing "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Najar*, 451 F.3d 710, 721 (10th Cir. 2006) (internal quotation marks omitted). That is not the case here. There is no reasonable probability that different jurors based guilt on different possessions by Mr. Taylor. The evidence presented to the jury showed an ongoing possession from the time Mr. Taylor stole the gun until he led police officers to the car containing it. The prosecutor referred to differing "instances" of possession in the course of clarifying the difference between actual and constructive possession, not to focus on different evidence supporting several distinct grounds for conviction. Nor did Mr. Taylor's counsel refer to different instances of possession in closing argument. Instead he argued that Mr. Taylor never possessed the gun at all. He asserted that the only evidence connecting

Mr. Taylor to the gun was his written statement, and he challenged the voluntariness of the statement. The jury, while it could have concluded that Mr. Taylor never came into possession of the gun, could have had no rational basis for distinguishing between different incidents of possession within a continuing course of possession.

## III. CONCLUSION

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge