943 F.2d 58
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Casey QUESADA, Defendant-Appellant.
 No. 90-2124.
 United States Court of Appeals, Tenth Circuit.
 Sept. 4, 1991.
 
 1
 Before JOHN P. MOORE and BRORBY, Circuit Judges, and VAN BEBBER, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 VAN BEBBER, District Judge.
 
 
 4
 This is an appeal following a one-day jury trial which resulted in defendant Casey Quesada's conviction for possession of over 500 grams of cocaine with intent to distribute. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Defendant Quesada raises three issues on appeal dealing with the sufficiency of the evidence and the jury instructions given by the district court. We find no error and affirm.
 
 
 5
 The events giving rise to this case began on August 9, 1989, when a package arrived at the United Parcel Service ("UPS") receiving complex in Albuquerque, New Mexico. The package had been sent "next day air" and was addressed to Casey Quesada at a post office box in Albuquerque. UPS does not deliver to post office boxes, so the package was sent to the "bad address slide." Attempts were made by UPS employees to find a street address and/or telephone number for Mr. Quesada. Finally, pursuant to standard company procedures and in accordance with the priority delivery policy, Kimberly Young, a UPS employee, opened the package to determine whether it contained an invoice with a street address for Mr. Quesada.
 
 
 6
 Upon opening the package, Ms. Young discovered a large zip-lock bag filled with a white, powdery substance. She contacted her supervisor, Rudy Reyes, who took the package to the UPS Loss Prevention Office. Two Loss Prevention investigators examined the contents of the package and contacted the Albuquerque Police Department. Three narcotics officers then met at the UPS Loss Prevention Office and examined the package. Officer Mike Dwyer performed a field test and found that the package contained 997.2 grams of cocaine. The officers then waited at UPS to see if someone would claim the package. At 6:00 p.m., that evening, after the customer counter closed, the officers took the cocaine with them and locked it in the police headquarters narcotics safe.
 
 
 7
 The next morning, the police decided to substitute a package of sugar for the cocaine and to effect a controlled delivery of the package. A small amount of cocaine (approximately .05 grams) was also placed in a cellophane wrapper and hidden beneath a layer of styrofoam in the bottom of the package. The police then took the doctored package back to the UPS office and waited for someone to claim it. A short while later, Mr. Quesada arrived at UPS and presented the rental receipt for his post office box to Mr. Reyes with the eleven-digit UPS tracking number for the package written on the back. At the direction of the police, Reyes handed the package over to Mr. Quesada.
 
 
 8
 The police followed Mr. Quesada as he drove away, but eventually lost him. However, Officer Dwyer had already subpoenaed the telephone company for Mr. Quesada's home address, so the police drove to Quesada's apartment complex. There, they found Mr. Quesada in his car driving towards the apartment complex exit. The police stopped the car and Mr. Quesada was placed under arrest and advised of his rights. Mr. Quesada then gave written permission to search both his car and his apartment. The police found the opened UPS package in the trunk of Quesada's car. The sugar had been removed, but the small amount of hidden cocaine was still intact. In the trunk of the car, the police also found a package containing 121.52 grams of cocaine as well as other plastic wrappings, rubber gloves, and zip-lock bags containing cocaine residue. In Quesada's apartment, the police found the sugar, various package wrappings and other drug paraphernalia, $34,960 in cash, as well as 4.29 grams of cocaine.
 
 
 9
 At the close of the government's case, Mr. Quesada moved for a judgment of acquittal on the grounds that the government had failed to establish that he had been in possession of an amount of cocaine greater than 500 grams. The court denied the motion, ruling that sufficient evidence of constructive possession existed to send the case to the jury. (R. Vol. I at 151-53.)
 
 
 10
 On appeal, Mr. Quesada argues that the district court erred in denying his motion for judgment of acquittal because the government's evidence failed to show actual or constructive possession of the cocaine contained in the UPS shipment. He contends that because the police had already confiscated the 997.2 grams of cocaine prior to his arrival at the UPS office, he cannot be convicted for actual or constructive possession of that cocaine.
 
 
 11
 In determining the sufficiency of the government's evidence of actual or constructive possession, the court is required to evaluate the evidence and reasonable inferences therefrom in the light most favorable to the government. If any reasonable jury could have found the essential elements of the crime proven beyond a reasonable doubt from the evidence so viewed, the court must affirm the judgment. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 12
 From the record before us, we conclude that the jury could reasonably have found that Mr. Quesada had actual possession of the .05 grams of cocaine hidden in the controlled-delivery package. Defendant argues that he cannot be convicted for possession of the .05 grams of cocaine because he was not aware that it was hidden in the doctored package and therefore, he did not have the requisite intent to distribute the cocaine. However, the evidence of other drug dealer paraphernalia found in Mr. Quesada's car and apartment is sufficient to prove that Mr. Quesada had the requisite intent to distribute. Furthermore, the jury could reasonably have found that Mr. Quesada had constructive possession of the full 997.2 grams of cocaine because he had the eleven-digit tracking number which permitted him to claim, and thus exercise dominion and control over, the original package. Thus, we find that there was sufficient evidence to support defendant's conviction and we affirm the district court's denial of the motion for judgment of acquittal.
 
 
 13
 Mr. Quesada next contends that the district court erred in instructing the jury on actual and constructive possession since these theories were not supported by the evidence. (R. Vol. I, doc. 33, Instruction No. 13.) Because defendant made no objection to this instruction at the time of trial, the issue may be raised on appeal only under plain error standards. Fed.R.Crim.P. 52(b); United States v. Simmonds, 931 F.2d 685, 687 (10th Cir.1991); United States v. Glick, 710 F.2d 639, 643 (10th Cir.1983), cert. denied, 465 U.S. 1005 (1984). The defendant cannot, as he argues, preserve his objection to an instruction simply by relying on his motion for judgment of acquittal. As discussed above, we conclude that there was sufficient evidence to support either a finding of actual or constructive possession and thus the court did not commit plain error in instructing the jury on both theories of possession.
 
 
 14
 Finally, defendant argues that the trial court's instruction on possession (Instruction No. 13) constructively amended the indictment and that certain evidence presented at trial created a prejudicial variance between the indictment and the facts as proven at trial.
 
 
 15
 A constructive amendment of the indictment occurs when the jury instructions effectively broaden the charges contained in the indictment. See United States v. Phillips, 869 F.2d 1361, 1364 (10th Cir.1988), cert. denied, 490 U.S. 1069 (1989). Substantial deviation of the instructions from an indictment violates the defendant's right under the Fifth Amendment to be tried only on charges presented in a grand jury indictment. United States v. Peterman, 841 F.2d 1474, 1477 (10th Cir.1988), cert. denied, 488 U.S. 1004 (1989). However, since instructions necessarily deviate somewhat from an indictment, instructions will be found invalid only if their deviation from the indictment infringes on a defendant's rights. Id.
 
 
 16
 Likewise, a variance occurs when the facts proved at trial differ from those alleged in the indictment, and becomes reversible error only if the facts established in trial materially diverge from facts in the indictment and the defendant suffers substantial prejudice. United States v. Weissman, 899 F.2d 1111, 1114 (11th Cir.1990).
 
 
 17
 The indictment charges that "on or about the 9th day of August, 1989," defendant possessed with intent to distribute "more than 500 grams" of cocaine. (R. Vol. I, doc. 1.) Defendant contends that the phrase "on or about" August 9, 1989, in the indictment and the phrase "actual or constructive possession, either alone or jointly with others" in Instruction No. 13 could have led the jury to conclude that defendant constructively possessed the original contents of the UPS package prior to its shipment from San Diego on August 8, 1989, by virtue of his relationship with the sender.
 
 
 18
 An indictment is to be interpreted in a practical, common sense fashion. Phillips, 869 F.2d at 1364. When, as in this case, a defendant fails to object to the instructions or the indictment at trial, the indictment is liberally construed in favor of validity. United States v. Freeman, 813 F.2d 303, 304 (10th Cir.1987). Again, since there was no objection at trial, reversal is not justified unless the district court's instruction constituted plain error. Fed.R.Crim.P. 52(b); Phillips, 869 F.2d at 1365. Based on these standards, we cannot conclude that the trial court's instruction broadened the charge against the defendant beyond that set out in the indictment.
 
 
 19
 A common sense interpretation of the indictment is that "on or about" August 9, 1989, refers to the receipt of the UPS shipment of cocaine and not to events occurring before its shipment. The record shows that the indictment fairly informed Quesada of the charges against which he was required to defend and that he was aware that he could be convicted for either actual or constructive possession of the cocaine. The government's theory of constructive possession focused on defendant's constructive possession of the UPS package after it had been confiscated by the police and sugar substituted for all but .05 grams of the cocaine. The prosecution never argued or suggested a joint venture as a theory of constructive possession. As stated above, we have found that the trial court did not commit reversible error by instructing the jury on both actual and constructive possession. In addition, we conclude that the court's instruction on constructive possession did not constitute a constructive amendment of the indictment.
 
 
 20
 Finally, defendant argues that the introduction of evidence of the 125.81 grams of cocaine found in his car and apartment at the time of his arrest created a risk that he was convicted for possession of this cocaine rather than for possession of the 997.2 grams of cocaine found in the UPS shipment. Although a limiting instruction instructing the jury as to the proper use to be made of this evidence would have been preferable, we find that the facts established at trial did not materially diverge from the indictment and that the defendant was not substantially prejudiced by the introduction of this evidence. Evidence of the 125.81 grams of cocaine was used along with evidence of other drug paraphernalia found in defendant's car and apartment to show that defendant had the requisite intent to distribute the cocaine found in the UPS shipment. The government never argued or suggested that defendant should be convicted for possession of the 125.81 grams of cocaine and the record does not support the claim that the jury based their verdict upon this evidence. Therefore, we conclude that the trial court did not err in admitting this evidence.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable G.T. Van Beeber, United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3