NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0098n.06

No. 08-6082

**FILED**
**Feb 10, 2011**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JOHNNY GRAHAM, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MOORE, COLE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Defendant Johnny Graham was found guilty of (1) being a convicted felon in possession of a firearm, and (2) being a convicted felon in possession of ammunition, in violation of 18 U.S.C. § 922(g). He was sentenced to eighty-four months' imprisonment and three years' supervised release. Graham argues on appeal that the evidence presented at his trial, the arguments of the Government's trial counsel, and the jury instructions resulted in a constructive amendment of his indictment, necessitating reversal of his felon-in-possession-of-ammunition conviction. Graham also argues that the district court erred in the trial's sentencing phase by applying a four-level enhancement to Graham's offense level for the firearm's having been used or possessed "in connection with another felony offense." Because no constructive amendment of Graham's indictment occurred, and because Graham's sentence was substantively and procedurally reasonable, Graham's arguments on appeal are without merit.

At 8:00 p.m. on April 9, 2007, Eracia Carruthers was sitting in a car with a friend in the driveway of her home in Memphis, Tennessee. While sitting in her car, Carruthers witnessed Graham walking around the side of the adjoining house, owned by Phyllis Parker. Carruthers and her friend exited the car to investigate, knowing that Graham did not reside in Parker's house. When Carruthers walked to the back of Parker's house, Carruthers saw Graham with an unidentified male. The back door of Parker's house was open. Suspecting a burglary, Carruthers called the police.

The police soon arrived at Parker's house, surrounded the house, and ordered the occupants outside. Graham came out of the rear door of the house fifteen to twenty seconds later. No one else was found in the house. Graham claimed that he had entered the house to use the restroom and/or to clean his colostomy bag. Officer Parz Boyle patted Graham down and discovered six pennies and a shell casing in his right front pants pocket. Graham admitted taking these from Parker's house. Officer Veronica Carson then searched Parker's house and found a jacket lying on the floor of a bedroom closet. Officer Carson found a .32 caliber Beretta firearm under the jacket. The firearm contained four live rounds. Graham admitted that the jacket was his, but denied possessing the firearm. Graham lived about two miles from Parker's house.

Graham was indicted on November 27, 2007. His indictment read as follows:

COUNT ONE: On or about April 9, 2007, in the Western District of Tennessee, the defendant, JOHNNY GRAHAM, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, that is, a Beretta .32 caliber pistol, in violation of Title 18, United States Code, Section 922(g).

COUNT TWO: On or about April 9, 2007, in the Western District of Tennessee, the defendant, JOHNNY GRAHAM, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce ammunition, that is a shell casing of 7.65 caliber

ammunition with the head stamp marking of "S&B", in violation of Title 18, United States Code, Section 922(g).[1]

Graham went to trial on May 30, 2008. In her opening statement, the Government's counsel said the following: "They [the police] pat him [Graham] down and they find in his right pants pocket a .32 caliber shell casing." Officers Boyle, Carson, and Kay Turnmire testified that they investigated the crime scene. According to them, the rear door of Parker's house (actually a rear attachment to the main part of the house) had been pried open. The officers determined that someone had entered the rear attachment to the house, cut a hole in the ceiling of the attachment to enter the attic, and then crashed through the attic into the house's kitchen. Officers Carson and Van Stacks testified that they witnessed Officer Boyle perform the pat down of Graham in which the shell casing was found on Graham's person. Officer Darnell Gooch testified that he wrote Graham's arrest ticket, which is supposed to reflect accurately what happened at the scene. Officer Gooch acknowledged that the arrest ticket, as well as the affidavit of complaint used to charge Graham, incorrectly state that the shell casing was found in the jacket, although it was actually found on Graham's person.

Parker testified that afterwards she discovered that an air conditioning unit and a vacuum cleaner were missing from the house. Tom Heflin of the Tennessee Bureau of Investigation Forensic Service Crime Laboratory testified that the four live rounds and the cartridge found on Graham matched each other, and that the cartridge casing was fired from the firearm found under Graham's jacket. Sergeant Robin Hulley testified that no fingerprints were found on the firearm, but that it is

---

[1]A superseding indictment was issued against Graham on May 20, 2008. This indictment retained the above two counts and added a third count for possession of a stolen firearm (the same .32 caliber Beretta pistol), in violation of 18 U.S.C. § 922(j). Graham was acquitted of this third charge.

extremely difficult to recover fingerprints from a firearm. Patricia Joyce Graham, Graham's mother, testified that Graham needed to use a colostomy bag after being shot several times and that he had to empty the bag two to three times a day. Mrs. Graham testified that Graham had difficulty walking because of his gunshot wounds. Mrs. Graham also testified that Graham had called her on the day of the crime to request a ride because his colostomy bag had filled up, but that she was unable to provide him with a ride. The parties stipulated that Graham was a convicted felon.

At the close of the evidence, the district court instructed the jury on the possession element: "The government does not necessarily have to prove that the defendant physically possessed the firearm for you to find him guilty of these crimes. The law recognizes two kinds of possession, actual and constructive possession. Either one of these, if proved by the government, is enough to convict." The district court then defined both actual and constructive possession for the jury. The Government included the following in its closing statement: "That at sometime thereafter Mr. Graham knowingly possessed ammunition. . . . And it's the government's position that at the time he was arrested he was in actual possession of the ammunition. He had it on his person in his right front pants pocket . . . ."

Graham was convicted of the two felon-in-possession counts on June 3, 2008. Graham's presentence investigation report, filed on August 5, 2008, recommended a total offense level of twenty-eight for sentencing purposes, consisting of a base offense level of twenty-four and a four-point enhancement for using or possessing a firearm "in connection with another felony offense"—namely, burglary or aggravated burglary. Graham objected to this four-point enhancement. Graham claimed that he had not possessed the firearm "in connection with another

felony" because the proof did not establish that he actually committed a burglary of Parker's house. The district court rejected this argument, found that a preponderance of the evidence established that Graham had possessed the firearm in connection with the felony of either burglary[2] or aggravated burglary,[3] and applied the four-point enhancement.[4] The district court then imposed a below-guidelines sentence of eighty-four months' imprisonment and three years' supervised release.

Graham appeals his felon-in-possession-of-ammunition conviction and his resulting sentence. He argues that the trial evidence, the Government's opening and closing arguments, and the jury instructions all indicated that Graham was being prosecuted for actually possessing the ammunition, whereas his indictment indicated that his charge was for constructively possessing the ammunition. Graham claims that this resulted in a constructive amendment of the indictment such that his felon-in-possession-of-ammunition conviction must be reversed. Graham also argues, as he did at sentencing, that the district court erred in applying the four-level enhancement for the firearm's being used or possessed in connection with the felony offense of burglary or aggravated burglary, because the proof did not establish that Graham committed either crime. Specifically, Graham claims that

---

[2]The relevant definition of burglary is found in Tenn. Code Ann. § 3-14-402(a)(1). "A person commits burglary who, without the effective consent of the property owner: (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault." *Id.* "Habitation," in relevant part, "[m]eans any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons." *Id.* § 39-14-401(1)(A).

[3]The definition of aggravated burglary is found in Tenn. Code Ann. § 39-14-403(a). "Aggravated burglary is burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." *Id.*

[4]The district court believed that the facts supported a finding of burglary, but was not sure whether they supported a finding of aggravated burglary, since Parker's house was unoccupied.

when he entered Parker's house, he lacked the intent to commit a felony, an intent which Graham considers a necessary element for the crimes of burglary or aggravated burglary.

Graham's challenge to his conviction fails because his indictment on the charge of being a felon in possession of ammunition was not constructively amended by anything presented at his trial. As an initial matter, Graham did not raise this issue in the district court proceedings. "Where, as here, a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as defined by Fed. R. Crim. P. 52(b) before we may exercise our discretion to correct the error." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). For Graham to prevail on plain-error review, he must establish that "(1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008).

At the very least, Graham cannot establish the first of these four plain-error elements: because no constructive amendment occurred, no error occurred. Graham claims that his felon-in-possession-of-ammunition indictment was constructively amended by the trial evidence, the jury instructions, and the Government's statements, in that these established that Graham was in actual possession of the ammunition, rather than in constructive possession. However, the language of the indictment does not speak to the manner in which Graham possessed the ammunition at all; it simply says that Graham "did knowingly possess . . . ammunition . . . in violation of Title 18, United States Code, Section 922(g)." "A constructive amendment results when *the terms of an indictment* are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the

offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008) (emphasis added). Because the indictment's terms are consistent with *either* actually possessing the ammunition *or* constructively possessing it, the indictment could not have been constructively amended by trial proceedings establishing that Graham actually possessed the ammunition in question.

This conclusion is consistent with cases from other courts that have confronted the same issue. In *United States v. Bryant*, 349 F.3d 1093 (8th Cir. 2003), the defendant was indicted for and convicted of being a felon in possession of a firearm. On appeal, the defendant argued that a supplemental jury instruction defining both actual and constructive possession, as well as the prosecutor's closing statement suggesting that the defendant's mere presence at the crime scene was sufficient to support a guilty verdict, "constructively amended the indictment from alleging sole, actual possession of the firearm to alleging constructive possession of it." *Id.* at 1097. The Eighth Circuit rejected this argument because "[the defendant's] indictment stated simply that he possessed a firearm without any qualification as to whether the possession was actual or constructive." *Id.* Therefore, "[n]either the prosecutor nor the district court by its supplemental instruction altered the essential elements of the offense of being a felon in possession of a firearm, which was the charge that appeared in the indictment." *Id.* at 1098. The Tenth Circuit also rejected a similar argument in *United States v. Quesada*, No. 90-2124, 1991 WL 172652 (10th Cir. Sept. 4, 1991).

Graham's challenge to his sentence also fails because his sentence was both substantively and procedurally reasonable. Graham raises only one argument against the reasonableness of his

sentence. He claims that the district court erred in imposing a four-level sentence enhancement for possessing or using a firearm "in connection with another felony offense"—burglary or aggravated burglary—because the evidence was insufficient to establish that Graham committed either type of burglary. In particular, Graham says that "the trial court was fundamentally mistaken as to the elements of burglary," and that it "completely overlooked the element that the entry be 'with intent to commit a felony.'"[5] Appellant's Br. at 31 (quoting Tenn. Code Ann. § 39-14-402(a)(1)).

Having the intent to commit "a felony," though, is not necessary for the crime of burglary to be committed. Rather, it is but one possible way to commit a burglary. Graham neglects to mention that under Tennessee law, one also commits a burglary if, "without the effective consent of the property owner," one "[e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a . . . *theft*." Tenn. Code Ann. § 39-14-402(a)(1) (emphasis added). While the district court could reasonably have found that Graham only entered Parker's house to empty his colostomy bag, which he claimed was his only intent, the evidence was also sufficient for the court to find by a preponderance that Graham instead entered the house with the intent to commit a theft.

A review of the record supports this conclusion. Graham entered Parker's home at night, when it was dark outside, and when he knew that the house was vacant because of the rental sign in

---

[5]Graham's argument focuses on whether there was sufficient proof to show that he committed burglary, while the Government submits that Graham committed aggravated burglary. The only substantive difference between the two felonies is that aggravated burglary involves a "habitation," whereas burglary does not. For purposes of this appeal, which specific type of burglary is supported by the facts is irrelevant. Either burglary or aggravated burglary would justify the four-point enhancement as "another felony offense," and in any event, the parties do not make an issue of whether Parker's house constitutes a "habitation."

the front yard. These are obviously factors in the time and location of a target that a prospective robber would value. When Carruthers saw Graham at the back of the house, he was with an unidentified male who apparently fled the scene soon after Carruthers saw the two. An air conditioner and a vacuum cleaner were later found missing from the house. Though Graham probably could not have carried these appliances off himself, due to his medical condition, Graham certainly could have been acting as the other man's accomplice, helping the man locate and steal items from Parker's house. Also, the back door of the house appeared pried open where Graham had entered, consistent with a forced entry, and Graham was carrying a box cutter at the time, which he could have used either to gain entry into the house himself or to help the other man gain entry. Graham also admitted taking money from the house. While Graham only took six pennies, he stole them nonetheless. The trial court could reasonably treat this as circumstantial evidence that Graham actually entered Parker's house with the intent to commit a theft. While these facts could merely suggest that Graham was so desperate to empty his colostomy bag that he was willing to break into Parker's house to do so, they could also suggest that Graham entered the house with the intent to commit a theft, as the trial court found.

We review this factual finding for clear error. *United States v .McCarty*, 628 F.3d 284, 289 (6th Cir. 2010). "A finding is clearly erroneous where, although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010)). We do not find any such error here. Based on the evidence described above, the district court could reasonably have found by a preponderance that Graham entered Parker's house without her permission and with the intent

to commit a theft.  This satisfies the elements of burglary, making Graham's four-level sentencing

enhancement reasonable.  Because Graham does not challenge either the substantive or procedural

reasonableness of his sentence in any other way, it cannot be said that the district court abused its

discretion in sentencing Graham.  *See United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

For these reasons, the judgment of the district court is affirmed.